Terry BIRDWELL, Appellant,

v.

Verline PHILLIPS, Respondent.

No. WD 43184.

Missouri Court of Appeals,
Western District.

Jan. 15, 1991.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 5, 1991.

Application to Transfer Denied
April 9, 1991.

Robert A. Bailey, Kansas City, for appellant.

Steven N. Beth, Independence, Lee M. Baty, Kansas City, for respondent.

Before BERREY, P.J., and FENNER and ULRICH, JJ.

BERREY, Judge.

Verline Phillips, sister of decedent, Hazel Webb, brought a wrongful death action against Alice Randolph. On November 27, 1989, Phillips filed an application for approval of settlement in the action. The sum of $25,000 had been offered and accepted in the matter.

Terry Birdwell filed a motion to intervene, alleging that he was the equitably adopted son of decedent, Hazel Webb. On February 7, 1990, appellant filed a motion for a decree of equitable adoption. After a hearing, the motion for equitable adoption was overruled by the trial court. Appellant was denied the right to intervene. Appellant moved for reconsideration and on March 15, 1990, appellant was granted leave to intervene but denied a decree of equitable adoption. From this order, appellant appeals.

Appellant raises six points on appeal which basically can be condensed into two issues: (1) whether the trial court erred in its denial of appellant's motion because the facts that the court relied on do not individually support its action and are not determinative; and (2) whether the trial court erred in following *Bellinger v. Boatmen's Nat. Bank*, 779 S.W.2d 647 (Mo.App.1989).

Appellant was born October 1, 1959, in Kansas City, Kansas, the natural son of Freda Mays and Major Birdwell. At the age of thirteen months, appellant was turned over to decedent Hazel Webb and her husband Cleo. The Webbs raised appellant. They had no other children although appellant's half-sister Vickie stayed with the Webbs for about a year. Appel-

lant had other sisters and brothers, Donald Birdwell, Helen Birdwell, Brenda Birdwell, Shanita Birdwell, and Marvin Birdwell. Appellant also had three other step-siblings, Earlene, Vickie, and Marilyn, the issue of a marriage between Freda and Earl Mays, whom Freda had married after divorcing Major Birdwell.

Appellant knew who his natural parents were because he was given this information at an early age by the Webbs. He lived with the Webbs until he was twenty and thought of them as his parents. The Webbs were involved with the activities and sports that Terry participated in. They encouraged him to go to college.

Terry's natural father, Major Birdwell, died when Terry was twelve. Terry attended the funeral and began receiving social security payments which continued until he was nineteen. Terry understood that receipt of these benefits was due to Major Birdwell's death. Terry had gone by the name Terry Webb until he was in eighth grade when the school he attended insisted he go by the name on his birth certificate.

Terry knew most of his brothers and sisters, although at the time of the hearing he had not yet met Shanita and had only recently become acquainted with Earlene. At the time of the hearing, Terry was living in California. He used Freda Mays' address and post office number for purposes of residency. Freda also lived in California.

Cleo Webb died on November 30, 1981. Terry helped Hazel with settlement money resulting from a lawsuit in regard to Cleo's death. Hazel gave Terry part of the proceeds of the settlement. After Cleo's death, Terry, his wife Carla and their oldest son, T.J., moved in with Hazel. Hazel regarded T.J. as her grandson.

When Hazel died, she bequeathed all of her property to her "son, Terry George Birdwell."

Appellant claims error in the trial court's order denying the equitable adoption as that order cites *Bellinger v. Boatmen's Nat. Bank*, 779 S.W.2d 647 (Mo.App.1989), and the facts of the instant case are distinguishable from those in *Bellinger*. The trial court did indeed cite *Bellinger* in its order to set out the proper burden of proof standard utilized in equitable adoption cases. That the facts in *Bellinger* are different from the facts presented here does not affect the burden of proof, it remains the same.

■ The trial court's judgment will be sustained unless it is against the weight of the evidence, there is no substantial evidence to support it, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). One who seeks an equitable adoption must seek to establish the existence of that adoption by clear, cogent and convincing evidence which leaves no room for reasonable doubt. *Bellinger v. Boatmen's Nat. Bank, supra*, 779 S.W.2d at 650. Each case must be determined on its own peculiar set of facts. *Mize v. Sims*, 516 S.W.2d 561, 564 (Mo.App.1974). Thus, appellant's attempt to distinguish *Bellinger* is fruitless.

■ Appellant sets out, in five separate points, the facts that the trial court based its decision on, denying his equitable adoption. Appellant claims that each of the facts was not determinative in an equitable adoption case. He points to error in using: (1) knowledge of appellant of his natural parents and siblings; (2) attendance of appellant at his natural father's funeral; (3) use by appellant of natural father's surname; (4) reference by appellant to the Webbs as his "foster parents"; and (5) receipt by appellant of social security benefits due to his natural father's death.

Even assuming that no single fact contained in the court's order was determinative, the combination of the facts contained therein overwhelmingly support the conclusion that there was no equitable adoption here.

■ If one who seeks equitable adoption does so by the use of circumstantial evidence then that evidence must "be consistent only with the existence of the equitable adoption and inconsistent with any other reasonable hypothesis leaving nothing to

conjecture." *Bellinger v. Boatmen's Nat. Bank, supra,* 779 S.W.2d at 650. The facts at issue here are not consistent with the occurrence of an equitable adoption.

Terry Birdwell told his friends that Cleo and Hazel Webb were his "foster parents." Despite appellant's arguments to the contrary, that term is not synonymous with "adoptive parent." Section 453.070.5, RSMo 1986, which appellant cites, clearly distinguishes between foster parents and adoptive parents, with "preference and first consideration for adoption placements to foster parents."

The receipt of social security payments due to the death of Major Birdwell which started when appellant was twelve and which Hazel Webb accepted for appellant is also consistent with the picture of the Webbs as appellant's foster parents. These checks were sent to Hazel Webb. Furthermore, 42 U.S.C. § 402(d)(3)(B) makes it clear that appellant was considered a dependent of Major Birdwell for the receipt of such payments. Acceptance of these checks is totally inconsistent with an intent to adopt.

Appellant has simply failed to carry the heavy burden faced by those who claim equitable adoption. The evidence presented here is open to conjecture and is, in some instances, inconsistent with a conclusion that an equitable adoption should be found. The judgment of the trial court is affirmed.

All concur.