Sandra WEIDNER, Plaintiff/Respondent,

v.

AMERICAN FAMILY MUTUAL INSURANCE CO., Defendant/Appellant.

No. 68210.

Missouri Court of Appeals, Eastern District, Division Two.

Sept. 3, 1996.

Thomas M. Pavelko, St. Louis, for appellant.

Stephen M. Glassman, Clayton, for respondent.

DOWD, Judge.

American Family Mutual Insurance Co., ("American Family") appeals from the trial court's judgment declaring Sandra Weidner ("Daughter") the equitably adopted daughter of Alfred L. Lott ("Lott") and from the award of sanctions against it. We reverse and remand.

Daughter was born to a single mother, Dorothy Hamblin, ("Mother") in January 1946 in Watertown, New York. Upon learning of her pregnancy, Mother had left her hometown of Syracuse for Watertown in order to spare her family embarrassment. Mother gave Daughter the fictitious surname Carpenter. Almost two years following Daughter's birth, Mother married Lott.

In 1949, Lott and Mother petitioned to have Daughter's name legally changed from Sandra Carpenter to Sandra Lott. No petition was ever made for her adoption. Daughter lived with Mother and Lott until her marriage in 1963. It is undisputed that Daughter referred to Lott as her father and Lott referred to her as his daughter. Daughter testified that she always believed Lott was her father and that it was not until she was thirty-four years old that Mother related to her the circumstances surrounding her birth. Daughter added that Mother claimed that although she was unmarried at the time of Daughter's birth, Lott was in fact her father. There was no evidence that prior to Daughter's birth, Lott and Mother either had any relationship or even lived in the same city.

Lott and Daughter's relationship grew more distant in later years. Lott moved to Missouri following his retirement in 1979, and Daughter testified that she had seen him only once since then. Daughter produced only three letters between them from this period.

Lott was killed in a car accident in July 1990. He left no will. Weidner sued American Family under its underinsured liability coverage. In that suit Weidner alleged she was Lott's daughter. American Family discovered Weidner was born almost two years before Lott and Hamblin married. It thus alleged Weidner was not Lott's natural born daughter and that the couple never adopted her. Weidner subsequently filed this declaratory action.

We first note this is not an action to determine paternity. This is an equitable suit seeking a declaration of adoptive status to confer standing on Weidner to pursue a wrongful death action under § 537.080, RSMo 1994. In this non-jury matter, the trial court found that "[n]otwithstanding the absence of any express agreement by Alfred

Lott to adopt [Weidner], the clear, cogent, and convincing evidence supports his intention to parent [her] as his own daughter." It also imposed Rule 55.03 sanctions on American Family for requesting a jury trial that "was neither asserted in a timely fashion, nor rooted in existing law."

In its first point on appeal, American Family asserts the trial court erred in finding Weidner the equitably adopted daughter of Lott because the evidence was just as consistent with a good stepdaughter/stepfather relationship as with an adoptive one. We agree.

Prior to 1917, the only statutory method of adoption in this state was by deed. *Menees v. Cowgill*, 359 Mo. 697, 223 S.W.2d 412, 416 (1949). Parents could transfer or contract to adopt children. It was under these circumstances that the doctrine of equitable adoption arose. When a promise to adopt had been made, but the actual adoption had not occurred, a court of equity could specifically enforce the contract or declare the parent estopped from denying the adoption. *Id.* The revision of the adoption laws did not diminish this authority:

> In 1917, the Forty-ninth General Assembly abolished the right to adopt children by deed or private agreement and vested exclusive jurisdiction over the adoption of children in the juvenile division of the circuit court. . . .

> It has been held by this Court that the enactment of adoption statutes by the General Assembly did not oust a court of equity from its jurisdiction to declare the existence of an equitable adoption. The theoretical underpinnings of the equitable adoption doctrine are, alternatively, the specific performance of a contract to adopt or an equitable estoppel to deny that an adoption agreed to has been made. *Goldberg v. Robertson*, 615 S.W.2d 59, 62 (Mo.1981). (citations omitted)

■ In Missouri an equitably adopted child may bring an action under the wrongful death statute. *Holt v. Burlington Northern R. Co.*, 685 S.W.2d 851, 857 (Mo.App. W.D. 1984).

■ In a court-tried, declaratory action we will sustain the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence or unless it erroneously declares or applies the law. *Bellinger v. Boatmen's Nat. Bank*, 779 S.W.2d 647, 650 (Mo. App. E.D.1989) (citing *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976)). A plaintiff requesting a decree of equitable adoption must establish its existence with clear, cogent, and convincing evidence. *Id.* Furthermore, if the plaintiff relies solely on circumstantial evidence, as is the case here, the evidence must be "consistent only with the existence of the equitable adoption and inconsistent with any other reasonable hypothesis leaving nothing to conjecture." *Id.* (citing *Niehaus v. Madden*, 348 Mo. 770, 155 S.W.2d 141, 144 (Mo.1941)).

Here, Daughter relies on the often cited maxim of adoption by estoppel which provides:

> Where one takes a child into his home as his own, thereby assuming the status of parent, and by reason thereof obtains from the child the love, affection, companionship and services which ordinarily accrue to a parent, he or those claiming through him will thereafter be estopped to assert that he did not adopt the child in the manner provided by law. *Matter of Estate of Van Cleave*, 610 S.W.2d 620, 622 (Mo. banc 1981).

■ However, a decree of equitable adoption will be granted only where justice, equity, and good faith require it. *Id.* In cases where it is a stepchild seeking equitable adoption from a stepparent, courts have looked for evidence of more than a stepchild/stepparent relationship, such as indicia of an intent or attempt to adopt. *See Id.*; *Drake v. Drake*, 328 Mo. 966, 43 S.W.2d 556, 560–561 (1931); *Capps v. Adamson*, 362 Mo. 539, 242 S.W.2d 556, 560 (1951). When such cases yield evidence of only a close stepchild/stepparent relationship, justice, equity and good faith do not require a finding of adoption. Otherwise, the numerous cases in which a stepchild is taken into the home of a stepparent and a close relationship develops would all give rise to equitable adoptions.

**404**

We conclude that Daughter has not met this highly rigorous standard. There is no evidence indicating that the relationship between Daughter and Lott was anything but a close stepfather/stepdaughter relationship. There is also considerable evidence inconsistent with an intent on Lott's part to adopt Daughter. In 1949, Lott and Mother petitioned a court to have Daughter's name changed. In doing so, Lott did not represent himself as her father nor did he take the additional step of petitioning for formal adoption. In 1981 when Lott filed for Veteran's benefits, he listed his sister as his closest relative. Lott and Daughter only saw each other once after Lott's retirement and communicated infrequently. Lott made no provision for Daughter in his estate.

Daughter stresses the closeness of her relationship with Lott and the fact that they always referred to each other as father and daughter. It is not unusual and is of little significance that a stepfather would call his stepdaughter his child and refer to and introduce her as such. *Capps v. Adamson,* 242 S.W.2d at 560. We do not question that the relationship here was a close one. Rather we are unconvinced that the closeness of a relationship serves to distinguish a step relationship from an adoptive one. Accordingly, the trial court's order finding Daughter to have been equitably adopted by Lott is reversed.

In its second point on appeal, American Family argues the trial court erred by imposing sanctions under Rule 55.03. We agree.

A day before trial, counsel for American Family requested a jury trial. The trial court denied American Family's request, and Daughter moved for sanctions on the basis that the request was untimely and not based in law. On the day of trial, American Family did not object to the matter proceeding as a non-jury trial. The trial court imposed sanctions under Rule 55.03 because American Family's request for a jury trial "was neither asserted in a timely fashion, nor rooted in existing law."

This rule provides in pertinent part, "[t]he motion shall not be filed with or presented to the court unless within thirty days after ser-

vice of the motion the challenged ... request ... is not withdrawn...." Rule 55.03(c)(1)(A). By filing a motion for sanctions the day after the challenged request was served, Daughter filed the motion prematurely. The mandatory thirty-day period had not elapsed. Therefore, the trial court lacked jurisdiction to sanction American Family under Rule 55.03.

Both the award of sanctions against American Family and the decree of equitable adoption are reversed. We remand for an entry of a declaratory judgment consistent with this opinion.

CRAHAN, P.J., and CRANDALL, J., concur.