**Shirley Joanne SMALLEY, Plaintiff–Appellant,**

v.

**Bobby E. PARKS, Geraldine M. Hensley, Ruby K. Pennell, Ervin L. Parks, Dorothy J. Sharp, Gregory Parks, Christopher Parks, Barry Parks, Douglas Evenson, Jeffrey Evenson, and Marla Hammonds, Defendants–Respondents.**

**No. 25111.**

Missouri Court of Appeals,
Southern District,
Division Two.

June 24, 2003.

---

**12.** Since the issues raised in Husband's first point are dispositive, we do not review his second point.

Gary E. Bishop, Mann, Walter, Bishop & Lippelman, P.C., Springfield, MO, for appellant.

John A. Parks, Hermitage, MO, for respondent.

JAMES K. PREWITT, Presiding Judge.

Shirley Joanne Smalley petitioned for a declaratory judgment from the probate division of the Circuit Court of Hickory County declaring her the equitably adopted child of Simon D. Parks, who died intestate, and as such, the sole heir of the estate of the decedent. Following a bench trial held on June 6, 2002, the trial court found against Petitioner. This appeal followed.

Shirley ("Appellant") was born in Johnson County, Missouri, on October 30, 1934, to Everett V. Williams and Thelma F. Walrath Williams. The couple separated

when she was very young, and she lived with her mother for approximately two years following their separation. Her parents divorced in 1940 or 1941. When her mother became ill with tuberculosis, Appellant stayed with cousins in Postoak, Missouri for approximately two years until her natural father moved her to Denver, Colorado. She resided with him for another two years until she herself became ill with tuberculosis and was hospitalized in Denver. After approximately two years there, Appellant was transferred to the sanitarium at Mt. Vernon, Missouri, where her mother worked.

On November 23, 1947, her mother married Simon D. Parks. Appellant lived with her mother ("Thelma") and Mr. Parks ("Simon") after her release from the hospital, at the age of thirteen. Thelma and Simon had no other children.

Appellant remained with Thelma and Simon until she left home to marry Jack Jackson on October 18, 1952. She was almost eighteen years old at the time she and Jack moved to Kansas City. Appellant's natural father was living in Kansas City at the time, and Everett Williams signed the consent for the couple to marry. Everett attended the wedding, although Thelma and Simon did not. Appellant testified that she and her new husband lived with Everett Williams for a couple of months in Kansas City, after which time the couple moved to Joplin.

Appellant's two children were born in Joplin. At some point, Appellant returned to live in Kansas City, where her natural father also resided. When Everett Williams became ill, Appellant testified that she and her children visited with him on several occasions until he died in May of 1967.

Thelma Parks died testate in January of 1995. Simon was the sole beneficiary under her will. Following her mother's death, Appellant continued to visit Simon and spend holidays with him. The two of them traveled to California to see her daughter and made several trips to Branson to visit her son.

When Simon became ill, he asked Appellant to move from Kansas City to Mount Vernon to take care of him. Appellant told him that she could not do so because she had health problems herself and required back surgery at that particular point in time. According to Mary Durham, a family friend, it upset Simon that Appellant would not move to Mount Vernon to care for him. Another friend and neighbor of Simon and Thelma, Ruby Sifferman, also stated that Simon had been upset with Shirley because she would not move to take care of him, although Shirley had offered to take care of Simon at her home in Kansas City, but Simon did not want to move.

Simon lived by himself until the last year of his life when he lived with a brother. He died April 18 or 19, 1999, intestate. Simon was survived by a brother and two sisters. One brother, with issue, had predeceased him. Certain assets, particularly joint bank accounts, passed to Simon's brother, Bobby, outside the administration of the estate. The surviving siblings claimed under intestate succession.

There was testimony that Appellant's mother, Thelma, had received a substantial settlement from a medical malpractice claim. There was also testimony that Thelma had worked for most of her marriage to Simon, when her health permitted, and had been a LPN. Ruby Sifferman testified that Simon told her about his and Thelma's estate plans: one-half was to go to his grandchildren (he had no grandchildren unless he considered Shirley's children his grandchildren) and the church, and the other half to go as Thelma wanted:

to Shirley. However, Simon tore up the will about a year before his death because, Simon told Ruby, "he had dreams of [Appellant's boyfriend] coming to his house and getting his money." Sandra Campbell, another family friend, testified regarding the disposition of Thelma's and Simon's estate: Thelma told her that one-half would go to Simon's brothers and Shirley would get Thelma's part. Sandra stated that Thelma was adamant about her half going to her daughter.

Appellant filed her petition for a declaratory judgment on November 8, 1999, claiming that Simon "expressly promised and agreed to adopt [Appellant] when she was still a child of tender age but Decedent failed to perform said agreement for reasons unknown to [Appellant]." By docket entry on July 8, 2002, the trial court denied the relief sought by Appellant.

▮ On appeal, Appellant presents one point relied on: "The trial court's judgment denying equitable relief to Appellant was without any substantial supporting evidence and was against the clear and convincing weight of the evidence proving Appellant to be the equitably adopted child of decedent Simon Parks."

▮ The trial court's judgment will be sustained unless it is against the weight of the evidence, there is no substantial evidence to support it, or it erroneously declares or applies the law. *Weidner v. American Family Mut. Ins. Co.*, 928 S.W.2d 401, 403 (Mo.App.1996).

▮ The doctrine of equitable adoption is a judicial remedy based upon a promise or agreement to adopt which is never fulfilled. *Gardner v. Hancock*, 924 S.W.2d 857, 859 (Mo.App.1996). It serves "the purpose of securing the benefits of adoption that would otherwise flow from the adoptive parent under the laws of in-

testacy had the agreement to adopt been carried out[,]" and gives "effect to the intent of the decedent to adopt and provide for the child." *Id.* In certain cases, "[e]quity may grant specific enforcement of a contract to adopt." *In re Estate of Van Cleave*, 610 S.W.2d 620, 622 (Mo.banc 1981).

▮ "To warrant a decree of equitable adoption, it is not indispensable that a contract to adopt be shown by direct evidence, rather such an agreement may be inferred from the acts, conduct, and admissions of the adopting parent." *Mize v. Sims*, 516 S.W.2d 561, 564 (Mo.App.1974).

▮ To establish the existence of an equitable adoption, the person seeking the declaratory relief must produce "clear, cogent and convincing evidence which leaves no room for reasonable doubt." *Birdwell v. Phillips*, 805 S.W.2d 220, 221 (Mo.App. 1991). Circumstantial "evidence must be consistent only with the existence of the equitable adoption and inconsistent with any other reasonable hypothesis leaving nothing to conjecture." *Bellinger v. Boatmen's Nat'l Bank of St. Louis*, 779 S.W.2d 647, 650 (Mo.App.1989). An equitable adoption can be declared only where justice, equity and good faith require it. *Goldberg v. Robertson*, 615 S.W.2d 59, 62 (Mo.banc 1981).

▮ "[P]recedent is of little value in determining the sufficiency of the evidence to support a decree of equitable adoption." *Mize*, 516 S.W.2d at 566. "Each case must be determined on its own peculiar set of facts." *Birdwell*, 805 S.W.2d at 221.

▮ Case law demands that there be strong evidence of an intent, attempt, agreement or a promise to adopt by the intended parent. *See Weidner*, 928 S.W.2d at 403; *Bellinger*, 779 S.W.2d at 651–52; *Estate of Van Cleave*, 610 S.W.2d

**142**

at 622; *Gardner,* 924 S.W.2d at 859. Evidence of more than a close stepchild/stepparent relationship is required to meet the highly rigorous standard imposed on one seeking a declaration of equitable adoption. *Weidner,* 928 S.W.2d at 403.

Friends and close acquaintances of Thelma and Simon testified that Simon referred to Shirley and her children as "our daughter" and "our grandchildren," respectively, and that many in the community never realized until Simon's death that Shirley was not his natural daughter. Appellant's son testified that Thelma once told him that "they were unable to do the adoption, even though they would like to have or wanted to." He also stated that Simon told him "that when they were able to do that [adoption] it was no longer important because of the age of [Appellant]." Appellant's daughter testified that Thelma had told her that she and Simon did not have the financial resources to adopt Appellant until she was an adult herself. She also stated that Simon told her soon after Thelma had died that he had wanted to adopt Appellant but had not been financially able to do so when Appellant was young and that he considered her his daughter.

Appellant testified that her natural father never provided support for her and seldom visited her after she returned to Missouri to live with her mother and Simon. Appellant stated that she retained her natural father's name and never used the name "Parks," although she never felt about her natural father the same way she felt towards Simon. She called Simon "Dad," and her children referred to him as their grandfather. There was testimony that she visited Thelma and Simon frequently and that they visited her and her children, with whom Simon also had a close relationship. A close friend of the family stated that Shirley had been known in the community as "Shirley Parks."

However, Appellant made no claim during her testimony that there had been any promise or agreement for Simon to adopt her at any time, and she provided no testimony describing any expression from Simon of any intent or attempt on his behalf to adopt her. We cannot say that the evidence is consistent only with the existence of an equitable adoption. Here, Appellant has failed to carry her burden of proof. Point denied.

The judgment is affirmed.

RAHMEYER, C.J., and SHRUM, J., concur.