Deana Kay BYERS, Appellee,

.v.

Steven Lee BYERS, Appellant.

No. 53317.

Supreme Court of Oklahoma.

Oct. 7, 1980.

Johnston, Franklin & Hladik by Ronald G. Franklin, Enid, for appellant.

Carter & Carter by Rowland F. Carter, Enid, for appellee.

OPALA, Justice:

The first–impression question to be answered is whether one who knowingly marries a woman then pregnant by another man may be held liable for support of the child–as its legal father–in a divorce action brought by the mother less than six months after the child's birth. We hold that in the situation so described (a) the court could not impose upon the husband the legal status of the child's father, and (b) the mother should have been relegated to the pursuit of a statutory paternity suit against the biological father.

Mother was admittedly pregnant by another person when she met, in July 1977, her husband–to–be. The parties intermarried in September and lived together for some two and one–half months thereafter. The child, whose status is here in question, was born January 18, 1978. Mother's divorce action was brought the following June. It stands undisputed that Husband,

who contests his legal paternity status, is not the child's natural father.[1]

The trial court resolved the legal paternity dispute adversely to the Husband and anchored its decision on these conclusions of law: (1) Mother's marriage to Husband barred her from instituting a paternity suit against the biological father and (2) the child in dispute was a legal child of the marriage. Husband was ordered to meet his child–support obligation. From the paternity status ruling, Husband brings this appeal. *We reverse.*

■ Under 10 O.S. 1971 § 83 Mother may bring a proceeding against the child's biological father to compel payment of support. Mother's marriage to the Husband before the child's birth will not bar a filiation suit, nor can it afford a defense to the putative father.[2] Mother's remedy by a statutory paternity proceeding remains unimpeded by her marriage.

■ The court's authority to order child support in a divorce suit is derived from 12 O.S. Supp. 1974 § 1277.[3] That section provides that an order may be made for support of *minor children of a marriage*, i. e. those children of a husband and wife upon whom parental status may be legally imposed. All children born in wedlock are presumed to be the legal children of the marriage.[4] The statutory presumption may be disputed by either the husband or wife. If the presumptively legal child is reared by

the husband and wife, without a dispute as to its paternal condition, for at least two (2) years, the child's legal status becomes incontestable.[5]

■ In the case at bar, the undisputed testimony of both Husband and Mother established, without a question, the child's paternity in another man. This admitted fact operated conclusively to rebut the statutory "presumption of legitimacy" that attaches to children born during wedlock.[6]

■ Neither may Mother rely here on some legally effective variant of adoption—formal or informal–as a basis for imposing upon the Husband the status of a legal father. This is so because there is absolutely no showing of a formal adoption, either consummated or inchoate. The doctrine of equitable adoption is clearly inapposite. It requires evidence of a binding contract for adoption whose existence must be established by clear and convincing proof.[7] No offer was made to show facts tending to establish a contract amounting to an equitable adoption. Statutory adoption by "acknowledgment", as provided in 10 O.S. 1971 § 55, is also inapplicable to this case. That species of adoption requires a public acknowledgment of paternity which is not present here.[8] Moreover, § 55 adoption by acknowledgment may be effected only when the "adopting husband" is the child's biological father.[9] In short, the child does

---

1. By operation of 10 O.S.Supp. 1974 § 1.2 all children born in Oklahoma after July 1, 1974 *are legitimate in law.*

2. *Ratzlaff v. State*, 121 Okl. 263, 249 P. 934 [1926].

3. *LeCrone v. LeCrone*, Okl., 596 P.2d 1262 [1979].

4. 10 O.S. 1971 § 1.

5. 10 O.S.Supp. 1973 § 3. The cited section provides: "The presumption of legitimacy can be disputed only by the husband or wife or the descendant of one or both of them. Illegitimacy in such a case may be proved like any other fact. Provided that if the child is born during the course of the marriage and is reared by the husband and wife as a member of their family

without disputing the child's legitimacy for a period of at least two (2) years, the presumption cannot be disputed by anyone."

6. 10 O.S. 1971 § 1 and 10 O.S.Supp. 1974 § 1.1.

7. *Crozier v. Cohen*, 299 F.Supp. 563 [W.D.Okl. 1969]; *Clemons v. Clemons*, 193 Okl. 412, 145 P.2d 928 [1944]; *Eggstaff v. Phelps*, 99 Okl. 54, 226 P. 82 [1924]. See anno. in 97 A.L.R.3d 347 on *Modern Status of Law as to Equitable Adoption or Adoption by Estoppel* [1980].

8. *In re Estate of LaSarge*, Okl., 526 P.2d 930 [1974]; *Standridge v. State*, Okl., 441 P.2d 417 [1968].

9. *Kirkland v. Henry*, Okl., 296 P.2d 165 [1956].

not qualify as the legal offspring of Mother's marriage to Husband.

 Any contention by Mother that (a) she married Husband only because he had agreed to support the child and (b) by his promise Husband assumed an enforceable duty of support which is in the nature of a contractual obligation, is likewise doomed to failure. The promise, if any was made, is not in writing. Any oral promise made upon consideration of marriage, other than one which falls into the category of mutual promises to marry, is unenforceable. It violates our statute of frauds.[10]

For a possible analogy to the case at bar we have examined decisions from other jurisdictions which deal with the status of a child conceived in *wedlock*, with the husband's consent, by artificial insemination.[11] Those cases are not in discord with our conclusion here. They hold that the husband of a woman who conceives by this method is legally responsible for the support of the child so brought into this world, if he had consented to the wife's conception by artificial means. The consensual use of a stranger's sperm is deemed tantamount to the husband's adoption of that sperm as his own.

Those cases are clearly distinguishable from the case at bar. They are based largely upon either equitable estoppel or implied contract. These theories are inapposite to this case. First, Mother had conceived before she met Husband. Second, the "natural" father does not always become a legal father just because his sperm was used in the artificial insemination process. Nay, the sperm donor, who is quite often anonymous, cannot be made to respond. In this case, the episode of *insemination* occurred *before wedlock* and was brought about through *natural* rather than *artificial* means by one who was a *stranger* to the marriage during which the child happened to be born.

 A situation most closely analogous to one before us is that of a stepfather—a man who marries a woman having a child by a previous marriage. Under the provisions of 10 O.S. 1971 § 15, he is not obligated to support his wife's children by a former marriage. Neither is the natural father relieved of his legal obligation to support the children when the stepfather takes them into his home as members of his family.[12] The obligation of the natural father to support his children is continuing and overriding. The law's recognition of the natural father's unaltered obligation toward his children enables a woman to maintain a paternity suit even though she marries a man other than her child's sire.[13]

Both the finding that the child was "of the parties' marriage" and the judgment imposing on the Husband the legal status of a father are erroneous in law.

Reversed.

LAVENDER, C. J., IRWIN, V. C. J., and WILLIAMS, HODGES, BARNES and HARGRAVE, JJ., concur.

SIMMS, J., concurs in result.

10. 15 O.S. 1971 § 136, subd. 3. See also *Nickell v. Nickell*, 207 Okl. 533, 251 P.2d 787 [1952].

11. *People v. Sorensen*, 68 Cal.2d 280, 66 Cal. Rptr. 7, 437 P.2d 495 [1968]; *Gursky v. Gursky*, 39 Misc.2d 1083, 242 N.Y.S.2d 406 [1963]; see also *C.M. v. C.C.*, 152 N.J.Super. 160, 377 A.2d 821 [1977].

12. *Howard v. Howard*, Okl., 331 P.2d 946 [1958].

13. *Ratzlaff v. State*, supra note 2.