Charles W. LOWRANCE, Administrator, Oklahoma Veterans Center, Clinton Division, and Oklahoma Department of Veterans Affairs, and the War Veterans Commission of the State of Oklahoma, Appellants,

v.

Ledel J. PATTON, Administrator of the Estate of Robert Richardson, Deceased, Appellee.

No. 61434.

Supreme Court of Oklahoma.

Nov. 25, 1985.

Michael C. Turpen, Atty. Gen., George R. Barr, Jr., Oklahoma City, for appellants.

Frank W. Davis, Davis and Hudson, Guthrie, for appellee.

SUMMERS, Justice.

Plaintiff/Appellee is the administrator of the estate of a deceased veteran. Defendant Lowrance/Appellant is Administrator of the Oklahoma Veteran's Center, Clinton Division, and as such was custodian of certain funds of the veterans. Defendants/Appellants Oklahoma Department of Veterans Affairs and War Veterans Commission are agencies of the State of Oklahoma. It is conceded that defendant Lowrance was at all times complained of acting in his official capacity.

The suit was brought for recovery of the deceased veterans funds which had erroneously been released to the son of the veteran. The trial court directed a verdict for the plaintiff. Defendants appeal.

### FACTS

On February 11, 1981, while a resident of the Oklahoma Veterans Center in Clinton, Oklahoma, Robert Richardson died. At the time of his death, he had nine thousand five hundred fifty-four dollars and forty-three cents ($9,554.43) on deposit in a special account maintained by the Veterans Center. Mr. Richardson's burial expenses of four hundred dollars ($400) were paid from this account, and on March 9, 1981, Lowrance, relying on the recorded information provided by Robert Richardson, released the remaining nine thousand one hundred fifty-four dollars and forty-three cents ($9,154.43) to Harvey Richardson, the son of Robert. Thereafter, Lowrance learned for the first time of the existence of a will. The will left Harvey only $10.00. On April 23 and May 8, 1981, Lowrance, pursuant to a citation to appear before the probate court in Logan County, testified as to the disposition of the money in the account. On June 11, 1981, Administrator filed this action in the district court of Logan County against appellants and Harvey Richardson, alleging breach of a fiduciary duty and implied contract, and seeking nine thousand one hundred fifty-four dollars and forty-three cents ($9,154.43) in damages.

Appellants filed a Special Appearance and Denial of Jurisdiction and Venue which was overruled by the District Court. Appellants subsequently sought a Writ of Prohibition before the Supreme Court, but the Application to Assume Original Jurisdiction was denied on December 14, 1981.

On January 27, 1982, Summary Judgment was granted against Harvey Richardson for nine thousand one hundred fifty-

four dollars and forty-three cents ($9,154.43). He did not appeal.

On November 7, 1983, a jury trial was held. On the day of the trial, the trial court over the objections of defendants, allowed plaintiff to double the prayer for relief from nine thousand one fifty-four dollars and forty-three cents ($9,154.43) to eighteen thousand three hundred and eight dollars and eighty-three cents ($18,308.83) pursuant to 58 O.S. 1981 § 292. At the conclusion of the evidence, the trial court granted plaintiffs Motion for Directed Verdict, finding that there was a contract, that it was breached, and awarded plaintiff damages of eighteen thousand three hundred and eight dollars and eighty-three cents ($18,308.83).

## ISSUES

Appellants raise the following propositions of error:

I. The court lacked jurisdiction by reason of sovereign immunity.

II. Venue did not lie in Logan County.

III. The evidence did not justify a directed verdict.

IV. The trial court erroneously allowed plaintiff to recover double damages.

 Plaintiff (Appellee) argues that the issue of venue and jurisdiction of the trial court in this case has been decided by this court. He contends that this court, in effect, upheld the decision of the trial court by refusing to assume original jurisdiction and that this decision became "the law of the case" and res judicata. Such is not the law in Oklahoma. A decision by this court not to accept jurisdiction of a petition for a writ of prohibition is not a decision on the merits of the issue raised in the writ, and such decision is neither the "law of the case" nor res judicata. In *Lemons v. Lemons*,[1] we stated:

"Nor was the action of this court in denying plaintiff's application to assume original jurisdiction a holding that the judgment was one for alimony and res judicata to that effect."

## I. SOVEREIGN IMMUNITY

Appellants, all being state employees or agencies, contend that the District Court of Logan County lacked jurisdiction over the case and themselves under the doctrine of sovereign immunity. The state argues the fundamental rule that the sovereign state is immune from suit without its consent.[2] The court being the creature of a sovereign state can have no natural or presumptive jurisdiction over its creator. Absent plain consent, for a court to entertain a suit against the state amounts to judicial usurption.[3]

However, sovereign immunity is subject to waiver. This court has relaxed the application of this doctrine in actions based on contract.[4] We found no justifiable reason why the state should secure to itself the benefits of the contract without assuming the corresponding liabilities. We held where a person or entity enters into a valid contract with a proper state official and a valid appropriation has been made therefore, the state has consented to be sued and has waived its governmental immunity to the extent of its contractual obligation and such obligations may be enforced against the state in an ordinary action at law.

We first waived the doctrine of sovereign immunity with respect to tort actions when we recognized that the state had consented to be sued and waived its governmental immunity to the extent of its insurance coverage.[5] Later we abrogated the doc-

1. 238 P.2d 790, 794 (Okl.1954).

2. *United States v. Sherwood,* 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941) and *State Highway Commission v. Brixey,* 61 P.2d 1114 (Okl. 1936).

3. *Doughtery v. Vidal,* 37 N.M. 256, 21 P.2d 90, 93 (1933).

4. *State Board of Public Affairs v. the Principal Funding Corporation,* 542 P.2d 503 (Okl.1975).

5. *Schrom v. Oklahoma Industrial Development,* 536 P.2d 904 (Okl.1975).

trine of sovereign immunity with respect to tort actions altogether.[6]

In the light of our holding in *Principal Funding Corporation*, [7] the state argues that even if the plaintiff proves the existence of an implied contract, no implied waiver of immunity from a contract action can be suggested for the reasons: (1) The contract must be valid and entered into with the proper state official and (2) there must be a valid appropriation for such contract.

An examination of 72 O.S. 1981 § 222 which authorizes the special agency account at issue in this case reveals an absence of any valid appropriation for any implied contract that may exist. The statues states in pertinent part:

"[E]xcept nothing contained herein prohibits the establishment and utilization of special agency accounts by the Department of Veterans Affairs and its constitutent institutions, as may be approved by the Special Agency Account Board, for receipt and disbursement of the personal funds of Veteran Center patients and members and/or for receipt and disbursement of charitable contributions and donations for use by and for patients and members."

Because none of the money in the special agency account is state appropriated money, the appellants contend that the second requirement for recovery against state agencies and officials under a contract theory is absent and the doctrine of sovereign immunity is applicable. The trial court, therefore, lacked both subject matter and personal jurisdiction in the instant case. We do not agree.

72 O.S. 1981 § 222 authorized the creation of the special agency account at issue in this case. A special agency account must be established in compliance with 62 O.S. 1981 § 7.2 which creates a Special Agency Account Board, consisting of the Director of State Finance, the State Trea-

surer and Director of the Legislative Fiscal Office. The Board may approve special agency accounts in the official depository of the State Treasury. Subsection C provides in part:

"C. The Board may approve agencies and special accounts for money received by state agencies for the following purposes.

. . . .

8. Funds for which the state agency acts as *custodian*, including but not limited to, funds of ... patients...." (emphasis added)

The special agency account which is the subject of this action, consist of personal funds of the deceased who was a Veterans Center patient. The income to these accounts is, of course, not subject to appropriation by the legislature. Although there was no valid appropriation for any contract in this case, the state by statute was made the custodian of the funds of the deceased. We must determine, therefore, if a fiduciary relationship resulted.

In determining whether a fiduciary relationship was established, there are several rules couched in general terms which have been adopted to serve as a guide in the determination of this question. It is settled law that courts of equity will not set any bounds to the facts and circumstances out of which a fiduciary relationship may spring. It includes not only all legal relationships such as guardian and ward, attorney and client, principal and agent and the like, but it extends to every possible case from which a fiduciary relationship exists in fact, and in which there is confidence reposed on one side and resulting domination and influence on the other. The relationship need not be legal but it may be either moral, social, domestic or merely personal.[8] Therefore, a fiduciary relationship which is recognized and en-

6. *Vanderpool v. State,* 672 P.2d 1153 (Okl.1983).

7. Supra, note 4.

8. *Jones v. Robley,* 402 Ill. 302, 83 N.E.2d 570, 573–574 (1949); *Childrens Home of Rockford v. Andress,* 380 Ill. 452, 44 N.E.2d 437, 443 (1942); *Oldland v. Gray,* 179 F.2d 408 (10th Cir.1950).

forced equitably does not rest on any particular legal relationship.

■ Rather a fiduciary relationship springs from an attitude of trust and confidence and is based on some form of agreement, either expressed or implied, from which it can be said the minds have been met to create a mutual obligation.[9] Here such a fiduciary relationship was created by statute. The care and custody of the decedent's funds were based upon an implied agreement between the Center and the decedent wherein the Center became obligated to safely hold his funds and disburse them at the direction of the decedent or his lawfully appointed representative.

■ We hold, therefore, that when the state by statute makes itself custodian of an individual's funds and those funds are given to persons other than the individual or his lawfully appointed representative, the state has waived its sovereign immunity to that extent. The party so injured has a cause of action enforceable in equity for breach of that fiduciary relationship. The trial court had jurisdiction over this case and the appellants.

## II. DID VENUE LIE IN LOGAN COUNTY?

This case arose out of the probate case, *Estate of Robert Richardson*, District Court of Logan County, P–81–26, which was commenced on February 23, 1981. During the pendency of the probate case, the personal representative pursuant to 58 O.S. 1981 § 295 had a citation issued to Appellant, Charles Lowrance, commanding him to appear before the Probate Court and give testimony. Subsequent to Mr. Lowrance's appearance before the Probate Court, the personal representative applied for and was granted authority to file suit against Appellants. Pursuant to that Order, the case now before this Court was filed in the District Court of Logan County against Appellants.

In overruling Appellants plea denying jurisdiction and venue, the District Court stated that it had venue over the action because of its relation to the probate proceedings (R. 22).

The controlling principle applicable to this issue was recognized by this Court in *Matter of Adoption of B.K.J.*[10] when it adopted the following language regarding the jurisdiction of District Courts:

" 'The new Judicial Article [20 O.S. 1981 § 91.1] did not abolish nor alter the distinction between various types of court actions whether established by common law or statutes. Probate proceedings are strictly statutory. *The purview of probate proceedings in Oklahoma will be the same in the District Court as they were in the County Court unless changed by statute.*' " [quoting *Duke v. Nelson*, 536 P.2d 412, 413 (Okl.App. 1975) ]. (emphasis added).

While the District Court of Logan County had jurisdiction and venue over the probate case, it is an entirely different question with regard to the separate and distinct action against appellants. Appellants were third-parties to the probate proceeding, and as this Court has recognized on several occasions, the probate jurisdiction of a Court does not extend to actions between an executor and third persons, except to the extent permitted in 58 O.S. 1981, §§ 292–295.[11] Moreover, even under §§ 292–295, the probate court does not have the authority to adjudicate title to property or to compel its return, and a separate action must be brought.[12]

■ As a separate and distinct action to recover property for the estate, the venue in the present case must be determined independently of the probate proceeding. Two of the appellants are state agencies

---

9. *Rader v. Boyd*, 252 F.2d 585 (10th Cir.1957); *Appleman v. Kansas-Nebraska Natural Gas*, 217 F.2d 843 (10th Cir.1955); *Blackner v. McDermott*, 176 F.2d 498 (10th Cir.1949).

10. 639 P.2d 611, 614 (Okl.1982).

11. See e.g., *Taliaferro v. Reirdon*, 186 Okl. 603, 99 P.2d 522, 524 (Okl.1940).

12. Id. at 524.

and one is a state official acting in his official capacity at the time of the transfer of funds at issue in this action. Absent a specific statute to the contrary, venue is governed, therefore, by 12 O.S. 1981, § 133(2). Section 133(2) provides, *inter alia,* :

> "Actions for the following causes must be brought in the county where the cause, or some part thereof arose:
>
> . . . .
>
> Second. An action against a public officer for an act done by him in virtue or under color of his office, or for neglect of his official duties."

This court recently discussed the venue of actions against State officials in *Grand River Dam Authority v. State.*[13] We stated:

> "The law governing venue of actions against public officers is well settled in this state. We had occasion to revisit it recently in *Oklahoma Ordinance Works Authority v. District Court of Wagoner County*[14] where we said that this Court 'has attempted to follow the intent of the Legislature in localizing venue as to public officers.... An analysis of our decisional law concerning venue of an action against a public officer 'for an act done by him in virtue or under color of his office,' under 12 O.S. 1971, § 133, discloses that *it is the decisional act of the public officer* emanating from the county of his official residence *that gives rise to the cause of action and establishes venue* of an action against such officer; and *venue may not be founded upon the place where* the decisional act is to be performed or accompanied or where *damages may result from the performance or accomplishment of the decisional act.'* " [emphasis added].

Absent a specific statute to the contrary, venue of actions against public officers properly lies in the counties of their official residence.[15] None of the appellants in the instant case have official residence in Logan County.

Moreover, the pertinent probate statute, 58 O.S. 1981, § 252, which authorizes the bringing of an action to recover property, dictates the same conclusion. Section 252 provides:

> *"Action for the recovery of any property,* real or personal, or for the possession thereof, *and all actions founded upon contracts, may be maintained by* and against *executors and administrators* in all cases and *in the same courts in which the same might have been maintained* by or against their respective testators and intestates."* [Emphasis added].

This action, if brought by the testator against appellants, could not have been brought in the District Court of Logan County and, therefore, it cannot be properly maintained there by the administrator of the testator's estate.

The venue of this action did not lie in Logan County. The District Court of Logan County, therefore, was without authority to hear and determine the case. For this reason reversal is required and the action must be dismissed as to these appellants. It thus becomes unnecessary to address the appellants' propositions of error numbered III and IV.

Judgment of the trial court is reversed, and the case is remanded with directions to dismiss as to appellants for lack of venue in Logan County.

SIMMS, C.J., DOOLIN, V.C.J., and HODGES, LAVENDER, HARGRAVE and WILSON, JJ., concur.

OPALA, J., concurs in Part I; dissent in Part II.

KAUGER, J., disqualified.

---

**13.** 645 P.2d 1011, 1013 (Okl.1982).

**14.** 613 P.2d 746, 740 (1980).

**15.** Id.