2006 OK CIV APP 31

In the Matter of the ESTATE OF Hattie Kilgore DAVIS, Deceased.

Burns Davis and Barbara Sexson, Plaintiffs/Appellees,

v.

Inez Addy, Personal Representative under the last will and testament of Hattie Kilgore Davis, Defendant/Appellant,

and

Bobbie Hollingsworth, Defendant/Appellant.

Nos. 101,271, 101,278.

Court of Civil Appeals of Oklahoma, Division No. 4.

Oct. 11, 2005.

Rehearing Denied Feb. 23, 2006.

Craig R. Tweedy, Sapulpa, OK, for Plaintiffs/Appellees.

Deborah Ann Moon, Moon & Moon, Chickasha, OK, for Defendant/Appellant Bobbie Hollingsworth.

David K. Ratcliff, Chickasha, OK, for Defendant/Appellant.

F. Thomas Cordell, Catharine V. Ewing, Tom A. Frailey, Frailey, Chaffin, Cordell, Perryman, Sterkel & McCalla, LLP, Chickasha, OK, for Defendant/Appellant Inez Addy.

Charles L. Water, General Counsel, John G. Fears, Richard W. Freeman, Jr., Assistant General Counsel Department of Human Services, Oklahoma City, OK, for Amicus Curiae Applicant.

Opinion by JERRY L. GOODMAN, Presiding Judge.

¶1 Bobbie Hollingsworth and Inez Addy (collectively "Appellants") appeal the trial court's September 3, 2004, order granting Burns Davis' motion to vacate all orders rendered in Hattie Kilgore Davis' (Hattie) guardianship proceeding, PG–99–8, and probate proceeding, P–2001–80, because the orders are void and obtained by fraud. Based upon our review of the facts and applicable law, we affirm.

## FACTS

¶2 In 1971, Hattie married Leonard Davis (Leonard). Leonard had two adult children from a previous relationship, Burns Davis (Burns) and Barbara Sexson (Sexson). Hattie had no children of her own. Leonard died in 1982. In 1988, at the age of 79, Hattie executed a will leaving her estate to Burns and Sexson. In 1991, Hattie deeded her home to Burns and Sexson, keeping only a life estate, and in the mid–1990s, Hattie purchased several annuities upon which she listed Burns and Sexton as beneficiaries.

¶3 In March of 1999, Hattie's primary care physician filed a report with the Adult Protective Services Division of the Department of Human Services (DHS) indicating that Hattie was in need of care and supervision. Mitzi Aldrich, DHS services worker, was assigned to Hattie's case. The services worker subsequently visited with Hattie, Burns, Inez Addy (Addy), a family friend, Charles Park (Park), Hattie's attorney and friend, and others to discuss Hattie's situation.

¶4 On March 23, 1999, Hattie was admitted to the Geriatric Mental Health Unit at Hillcrest Health Center for an evaluation to determine if a guardianship was appropriate. Dr. Jimmie McAdams' April 5, 1999, written diagnosis provided that Hattie suffered from "Dementia, Alzheimer's Type with delusions"

that was "permanent, progressive and non-treatable," that she was "unable to care for her finances and basic needs of daily living," that she will "need twenty-four (24) hour supervision in a specialized facility," and "[s]he should have an objective, non-biased guardian appointed." He further concluded Hattie "would have difficulty understanding the nature of a guardianship hearing and attending such a hearing could potentially cause a worsening of her delusions."

¶ 5 The services worker's March 29, 1999, DHS report provided Hattie suffered from dementia, that a guardian should be appointed, and that she is "not capable of entering into legal agreements." The April 12, 1999, DHS report provided that Hattie "lacked the capacity to do or consent to anything."

¶ 6 On April 9, 1999, Hattie's attorney, Park, filed a petition for appointment of a guardian for Hattie, Case No. PG–99–8. The petition asserted Hattie was partially incapacitated and requested the court appoint Addy as special guardian pending a hearing on the appointment of Bobbie Hollingsworth (Hollingsworth) as permanent limited guardian. The petition identified Hollingsworth as Hattie's adult cousin who resided in Texas. On April 9, 1999, Judge Richard Van Dyck appointed Addy as special guardian.

¶ 7 On May 6, 1999, a hearing was held on the petition for appointment of a permanent guardian. Hattie, Park, Addy, Hollingsworth, and Burns, who was present with an attorney, attended the hearing. A different judge appointed Hollingsworth as permanent guardian and designated First National Bank and Trust of Chickasha (First National) as guardian's agent to handle all finances. Burns presented no objection or challenge to the guardianship at this time. Notably, neither Dr. McAdams' April 5, 1999, diagnosis nor the services worker's DHS reports were filed of record or attached to any pleading in

either the April 9 or May 6, 1999, court proceedings, although Parks believed the court had received Dr. McAdams' diagnosis prior to the May 6, 1999, hearing.

¶ 8 On June 29, 1999, Hattie executed a new will, drafted by Parks, which left a significantly smaller portion of her estate to Burns and Sexson, and added new bequests to Hollingsworth, Addy, members of Park's family, as well as other friends, relatives, and charities. The will was witnessed by the DHS services worker and Judge Van Dyck. The services worker's concurrent DHS report noted that Hattie was of sound mind and competent to sign the will. Judge Van Dyck later testified at deposition that at the time he witnessed the will, he believed Hattie to be of sound mind but that he did not recall Hattie's earlier guardianship proceeding before him. Further, he testified he was not advised of Dr. McAdams' diagnosis or of the services worker's previous DHS reports.

¶ 9 At the same time, Hattie executed change in beneficiary forms for each of her annuities, thereby changing the beneficiaries from Burns and Sexson to her estate. One of the annuities, IDS/American Express, refused to change the annuity beneficiary without a court order. Based on their refusal, the annuity beneficiary was not changed during Hattie's lifetime. Burns and Sexson did not learn of the new will or the change in annuity beneficiary until after Hattie's death.[1]

¶ 10 Hattie died on June 13, 2001. On June 28, 2001, Addy, as personal representative, offered the 1999 will for admission to probate in P–2001–80. On July 26, 2001, Burns filed a petition contesting the will as improperly executed and, concurrently, a petition for probate of Hattie's 1988 will. Cross-motions for summary judgment were filed. In an order filed on November 30, 2001, the trial court granted partial summary

---

1. Following Hattie's death, the personal representative of her estate sought the proceeds of the IDS annuity. Burns objected, asserting Hollingsworth, as personal guardian, could not effect a change of beneficiary without court approval. In August of 2001, Davis filed suit against Hollingsworth, First National, and the Life Insurance Company of the Southwest (LISW) seeking to set aside the change of beneficiary on the LISW annuities and asserting a claim to the annuity proceeds. *See* CJ–2001–423. The trial court disagreed and held a guardian does not need prior court approval for changing annuity beneficiaries if the change does not diminish the assets of the ward and the ward requests the change. On June 6, 2003, the Court of Civil Appeals affirmed in Case No. 98,448.

judgment to the personal representative finding the 1999 will was properly executed. The court, however, reserved ruling on the issue of whether the 1999 will should be admitted to probate. First National Bank was appointed Special Administrator of Hattie's estate. Burns appealed.

¶ 11 While the appeal was pending, Burns filed an amended petition contesting the 1999 will asserting Hattie lacked testamentary capacity and was unduly influenced at the time the will was executed. To date, these issues have not been addressed and the will has not been admitted to probate. Burns' appeal was subsequently dismissed on March 18, 2002, for lack of an appealable order.

¶ 12 On October 9, 2002, Burns filed a motion to vacate all orders in PG–99–8 (guardianship), P–2001–80 (probate), and CJ–2001–423 (annuity proceeds).[2] Burns asserted the guardianship orders were void for failure to comply with the statutory prerequisites for appointing a guardian and that the orders were obtained through fraud committed on him and the trial court.[3] More specifically, Burns alleged that Park and the DHS services worker withheld and concealed from him and the trial court Dr. McAdams' diagnosis and the DHS reports which specifically provided Hattie was fully incapacitated. This intentional and fraudulent concealment by Park, Addy, and Hollingsworth deceived Burns and the court, and resulted in a judicial finding that Hattie was only partially incapacitated and was competent to execute legal documents, including the 1999 will and the change in annuity beneficiaries forms.

¶ 13 On September 3, 2004, after four evidentiary hearings, the trial court sustained the motion to vacate and set aside all orders in PG–99–8 and P–2001–80 as void due to fraud perpetrated on the court, Hattie, and her heirs. The court held 1) the statute of limitations was tolled because the documents (Dr. McAdams' diagnosis and DHS' reports) relating to Hattie's diagnosis and condition were not produced to Burns pursuant to his

first discovery request; 2) the documents were not made available to the court at the April 9, 1999, temporary guardianship hearing, the May 6, 1999, permanent guardianship hearing, or when Hattie executed the 1999 will witnessed by Judge Van Dyck and the services worker; and 3) if the court had the information before it, Hattie may not have been declared partially incapacitated as decreed.

¶ 14 On October 4, 2004, Hollingsworth and Addy filed separate petitions in error asserting the trial court erred in granting the motion to vacate. The Supreme Court consolidated the appeals under the surviving Case No. 101,271.

## STANDARD OF REVIEW

■ ¶ 15 This Court will not disturb the trial court's order granting or denying a motion or petition to vacate absent a clear showing of an abuse of discretion. *Patel v. OMH Med. Ctr., Inc.,* 1999 OK 33, ¶ 20, 987 P.2d 1185, 1194. "An abused judicial discretion is manifested when discretion is exercised to an end or purpose not justified by, and clearly against, reason and evidence." *Id.*

## ANALYSIS

¶ 16 The issue before this court on appeal is whether the trial court abused its discretion is granting the motion to vacate all orders in PG–99–8 and P–2001–80. In support of their respective positions, the parties raise several issues in their appellate briefs, which we address as follows.

*1. Jurisdiction to Hear the Motion to Vacate*

■ ¶ 17 Appellants urge the motion to vacate was not properly brought before the trial court. This analysis goes to the jurisdiction of the trial court to grant the relief requested, and therefore, to the jurisdiction of this court. The issue of jurisdiction is

---

2. An amended motion to vacate was filed on March 12, 2004, wherein Burns removed CJ–2001–423.

3. Burns' motion to vacate further asserted the orders should be vacated under 12 O.S.2001, § 1031(3). Burns' motion failed to any present argument or decisional authority in support thereof.

fundamental, and may be raised at any time and sua sponte by the court. *See Medcalf v. Coleman*, 2003 OK CIV APP 53, ¶ 9, 71 P.3d 53, 55.

¶ 18 A trial court has discretion to open, modify, or vacate a default judgment on its own initiative or if a motion to vacate is filed within thirty days after the rendition of the judgment, order, or decree. 12 O.S.2001, § 1031.1(A). After thirty days expires, the court is without discretion or jurisdiction to vacate or modify a judgment which is not void on its face. *Cox v. Kansas City Life Ins. Co.*, 1997 OK 122, ¶ 10, 957 P.2d 1181, *citing American Bank of Oklahoma v. Adams*, 1973 OK 88, 514 P.2d 1191.

¶ 19 If more than thirty days have passed since entry of the order, 12 O.S.2001, § 1031.1(C) mandates the filing of a petition to vacate in conformance with 12 O.S.2001, § 1033. Section 1033 requires the action be brought by petition, verified by affidavit, and that personal jurisdiction be obtained by the issuance of summons as "in the commencement of a civil action."

¶ 20 Burns' motion to vacate was brought under the authority of 12 O.S.2001, §§ 1031(4) and 1038 on the basis the orders were void and fraudulently obtained and were filed over two (2) years after the guardianship orders were entered and eleven (11) months after the summary judgment order was entered in the probate proceeding. Since more than thirty days had lapsed since entry of the orders, §§ 1031.1(C) and 1033 required Burns to proceed by petition, verified by affidavit, with summons issued. This was not done. Where a motion to vacate judgment is not in the proper form of a verified petition, vacation of the judgment is properly refused. *State ex rel. Hunt v. Liberty Investors Life Ins.*, 1975 OK 165, 543 P.2d 1390. Thus, Burns' motion to vacate was not timely brought and the trial court was without jurisdiction to hear the motion, address the allegations of fraud, including a determination of whether the motion was timely filed, or grant the relief requested unless the order was void and subject to vacation under 12 O.S.2001, § 1038.

¶ 21 Section 1038 provides a "void judgment, decree or order may be vacated at any time, on motion of a party, or any person affected thereby." A judgment or order is facially void when the face of the record reveals one of the three elements of jurisdiction was absent, i.e., jurisdiction over the parties, jurisdiction over the subject matter, or jurisdictional power to pronounce the particular decision that was entered, is shown to have been absent. *Messenger v. Messenger*, 1992 OK 27, ¶ 11 n. 21, 827 P.2d 865, 870 n. 21. A void judgment or order may be attacked and vacated at any time. *See* 12 O.S.2001, § 1038; *Norman v. Trison Dev. Corp.*, 1992 OK 67, 832 P.2d 6. This provision applies only when the invalidity appears on the face of the judgment roll, i.e., when the record affirmatively shows the trial court lacked jurisdiction. *Washington Mut. Bank v. Farhat Enter. Inc.*, 2003 OK CIV APP 78, ¶ 16, 77 P.3d 1103, 1109. Accordingly, we now address whether Burns' assertions that the orders in PG–99–8 and P–2001–80 are void on their face and properly subject to vacation under § 1038.

### a. Guardianship Orders

¶ 22 In his motion to vacate, Burns asserted the guardianship orders are void for failure to strictly comply with the Oklahoma Guardianship and Conservatorship Act (Act), 30 O.S.2001 § 1–101 *et seq.* The Act sets forth specific requirements for the appointment of a guardian, including setting limits on who the trial court may appoint as guardian. Title 30 O.S.2001, § 4–104 provides, in part:

No person who has not been a resident, in good faith, of the State of Oklahoma for one (1) year past shall be appointed guardian of the property or person of a minor or an incapacitated or partially incapacitated person by the state courts of the State of Oklahoma.... Provided that this shall not prevent one from being appointed guardian of his own spouse, child, children, grandchild, grandchildren, parent, grandparent, brother, sister, aunt, uncle, niece or nephew even though he be a nonresident.

¶ 23 The petition for appointment of guardian provided that Hollingsworth was Hattie's non-resident cousin. According to the plain language of § 4–104, Hollingsworth was ineligible to serve as Hattie's guardian.

¶ 24 Furthermore, the order appointing Hollingsworth failed to comply with 30 O.S. 2001, § 3–113, which requires, among other things, that the order specify the specific limitations imposed on a ward which is determined to be partially incapacitated. Section 3–113 further requires the court to make specific determinations regarding whether the ward should retain the capacity to vote, serve on a jury, operate a motor vehicle, make personal medical decisions, enter into contracts, grant conveyances, or make gifts of property. *Id.* The May 6, 1999, order is silent as to these issues.

■ ¶ 25 Since guardianship proceedings are regulated by statute, failure to strictly comply with the statutory mandate may invalidate the appointment of the guardian. *In re Guardianship of Deere,* 1985 OK 86, 708 P.2d 1123. Accordingly, we find the trial court's repeated failure to comply with the Act renders the guardianship orders in PG–99–8 void.

### b. Probate Order

■ ¶ 26 In an order filed on November 30, 2001, the trial court, sitting in probate, granted partial summary judgment to the personal representative finding Hattie's 1999 will was properly executed. The court reserved ruling on the issue of whether the will should be admitted to probate. To date, Burns' undue influence and lack of testamentary capacity claims have not been addressed and the will has not been admitted to probate.

■ ¶ 27 At the outset, we note the summary judgment procedure utilized by the trial court in the probate proceeding was error. A probate proceeding is not a suit or action of a civil nature which is cognizable as a case at law or in equity. Probate is a special statutory proceeding, controlled by the probate code, which moves along a procedural track vastly different from that followed by a regular civil action. *See In the*

*Matter of Holcomb,* 2002 OK 90, ¶ 18 fn. 17, 63 P.3d 9, 14 fn. 17; *Wilson v. Kane, Jr.,* 1993 OK 65, ¶ 6, 852 P.2d 717, 721–22. Probate proceedings are prescribed and limited by statute and unless a specific jurisdiction or power is given to the court, it does not exist. *Wilson,* 1993 OK 65, 852 P.2d 717; *Lowrance v. Patton,* 1985 OK 95, 710 P.2d 108.

¶ 28 Pursuant to the probate code, when a petition for probate of a will is filed, the court must schedule a day for hearing the petition. 58 O.S.2001, § 25. If a will contest is filed, the petitioner or other interested person may demur. 58 O.S.2001, § 41. However, issues of fact raised involving the validity of the will, including lack of testamentary capacity and allegations of undue influence, must be tried and determined by the court. *Id.* The probate code does not provide for summary or partial summary adjudication. After hearing the evidence, the trial court "must set forth its findings of fact and conclusions of law in writing and render a judgment based upon such findings, either admitting, or refusing to admit, the will to probate." 58 O.S.2001, § 42.

¶ 29 Since summary judgment is not an authority or power granted to the trial court by the probate code, the court did not have jurisdictional power to grant partial summary judgment to the personal representative. *See Messenger,* 1992 OK 27, 827 P.2d 865 (a judgment or order is facially void when the face of the record reveals one of the three elements of jurisdiction was absent, i.e., jurisdiction over the parties, jurisdiction over the subject matter, or jurisdictional power to pronounce the particular decision that was entered, is shown to have been absent). Therefore, the order is void on the face of the record and may be attacked and vacated at any time. *See* 12 O.S.2001, § 1038. Accordingly, the November 30, 2001, order granting partial summary judgment is void and was properly attacked under the provisions of 12 O.S.2001, §§ 1031 and 1038. Thus, the trial court did not err in granting Burns' motion to vacate the November 30, 2001, order in P–2001–80.

## CONCLUSION

¶ 30 In conclusion, the orders entered in the guardianship and probate proceedings are facially void and, therefore, were properly attacked by a motion to vacate under 12 O.S.2001, §§ 1031 and 1038. Since this issue is dispositive, we need not address the remaining issues raised on appeal. Accordingly, the September 3, 2004, order vacating all orders entered in PG–99–8 and P–2001–80 is affirmed.

¶ 31 AFFIRMED.

RAPP, V.C.J., and STUBBLEFIELD, J., concur.