OSCN Found Document:IN THE MATTER OF THE ESTATE OF MCGAHEY

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 IN THE MATTER OF THE ESTATE OF MCGAHEY
2015 OK CIV APP 21
Decided: 03/20/2015
Mandate Issued: 05/07/2015
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2015 OK CIV APP 21, __ P.3d __

 

IN THE MATTER OF THE ESTATE OF ERNEST A. MCGAHEY, DECEASED.

JAMES MCGAHEY, Respondent/Appellant,
v.
RAY MCGAHEY, Petitioner/Appellee.

APPEAL FROM THE DISTRICT COURT OF
MARSHALL COUNTY, OKLAHOMA

HONORABLE GREGORY L. JOHNSON, TRIAL JUDGE

AFFIRMED

Dustin P. Rowe, ROWE LAW FIRM, Tishomingo, Oklahoma, for Respondent/Appellant
Jeffrey S. Landgraf, LITTLE LAW FIRM, PLLC, Madill, Oklahoma, for Petitioner/Appellee

DEBORAH B. BARNES, JUDGE:

¶1 Respondent/Appellant James McGahey (Respondent) appeals from the trial court's March 26, 2014 Order granting the motion for summary judgment of Petitioner/Appellee Ray McGahey (Petitioner), and from the trial court's April 23, 2014 Order determining, among other matters, the heirs at law of Ernest A. McGahey (Decedent). Two questions are presented on appeal: (1) whether the trial court properly found it possesses authority to award summary judgment in probate proceedings, and (2) whether the trial court properly found that no genuine disputes of material fact exist and that Respondent is not the adopted son of Decedent pursuant to the doctrine of equitable adoption. We answer both questions in the affirmative and, consequently, we affirm.

BACKGROUND

¶2 Petitioner, who is Decedent's brother, filed a petition in August, 2013, asserting Decedent died intestate, setting forth the heirs at law, and requesting that letters of administration be issued to him. Respondent, who was not listed as an heir in the petition, filed an objection stating that he is the son of Decedent and that he is, therefore, the only heir at law.[1]

¶3 Petitioner filed an objection to these assertions and, in January, 2014, filed a motion for summary judgment asserting that Respondent is not an heir at law based on the following facts: "[Respondent] is not the biological child of [Decedent]," and "[Respondent] was not adopted by [Decedent]." Petitioner asserts that, instead, Respondent is the stepson of Decedent. In support, Petitioner has attached, among other things, two pages from a deposition transcript of Respondent in which Respondent admits Decedent is not his biological father, but states Decedent was "the only dad I ever knew." In addition, Respondent states in the deposition excerpt as follows regarding the possibility of being adopted by Decedent:

A. We talked about it. We talked about it one time. And he told me it was not necessary unless my mother wouldn't have it any other way. And I was - I think I was - had just gotten out of the Marine Corps. I think that was '82. Been out a couple of years.

Q. That's the only discussion you ever had with [Decedent] about him adopting you, correct?

A. Yeah.

Q. And in that conversation he told you it was not necessary?

A. He told me it wasn't necessary unless my mother wouldn't have it any other way.

Q. What does that mean, sir?

A. I believe, you know, I believe and the way that I [saw] it, we had a relationship, you know, and I guess he didn't need a piece of paper and I didn't either. At that time I just, you know, I didn't - I just wasn't looking - I just wasn't looking ahead I guess. You know, had I said the right things, maybe we wouldn't be sitting here today.

¶4 In his response to Petitioner's motion for summary judgment, Respondent does not dispute the facts that he is not the biological child of Decedent, and is, instead, the stepson of Decedent. However, Respondent asserts that for purposes of intestate succession, he is the adopted son of Decedent pursuant to the doctrine of equitable adoption. He argues "[t]hat a majority of the states recognize equitable adoption in one form or another"; "[a]lmost exclusively, the application of the doctrine is limited to intestate estates"; and "[Decedent] held [me] out publicly as his son." In support, Respondent has attached several campaign fliers - apparently prepared by Decedent when running for a seat in the Oklahoma House of Representatives - in which Respondent is described as Decedent's son.

¶5 In its March Order, the trial court first found that summary judgment procedure is proper within a probate proceeding. Following a well-reasoned discussion of the doctrine of equitable adoption in Oklahoma, the trial court found that because there is nothing "in the evidentiary materials submitted by either Petitioner or Respondent showing or tending to show an agreement by the Decedent to adopt [Respondent] as his son," that Petitioner's summary judgment motion should be granted.

¶6 In its April Order, the trial court found that Decedent died intestate, set forth the heirs at law (excluding Respondent), and found that letters of administration should be issued appointing Petitioner as administrator of Decedent's estate.

¶7 From these Orders, Respondent appeals.

PRELIMINARY ISSUE

¶8 As stated above, the trial court found in the March Order that summary judgment may be granted within a probate proceeding. The trial court acknowledged the apparent difficultly of this issue, stating:

While a Court of Civil Appeals decision suggests it is improper to utilize a summary judgment procedure within a probate case, [i.e., In re Estate of Davis, 2006 OK CIV APP 31, 132 P.3d 609], as far back as 1976, the Oklahoma Supreme Court approved of using this procedure in a probate proceeding. See: [In re Estate of Glomset], 1976 OK 30, 547 P.2d 951, 953. Based upon the foregoing, the Court finds that the Motion should be considered.

¶9 The trial court further noted that

[o]ther cases which approve of using the summary judgment procedure in a probate context are the following: In re Estate of Gellar, 1999 OK CIV APP 45, 980 P.2d 665, 669; In re Estate of Richardson, 2002 OK CIV APP 69, 50 P.3d 584, 585; In re Estate of Ringwald, 1995 OK CIV APP 114, 905 P.2d 833, 837.

¶10 In Davis, this Court correctly stated that probate proceedings move along a "vastly different" procedural track than that followed in "a regular civil action." 2006 OK CIV APP 31, ¶ 27.[2] The Davis Court then concluded that because "[t]he probate code does not provide for summary or partial summary adjudication," and because "summary judgment is not an authority or power granted to the trial court by the probate code," that, in a probate proceeding, a trial court lacks "jurisdictional power" to award summary judgment. Id. ¶¶ 28-29.

¶11 As noted by the trial court, this conclusion is at odds with earlier cases such as Richardson, in which a separate division of this Court approved, at least implicitly, of the use of summary procedure in a probate proceeding. We note that the Richardson Court faced the same procedural history this Court faces in the present case in that the trial court granted summary judgment in the probate proceeding, and, during the pendency of the appeal, the Oklahoma Supreme Court ordered that briefs be submitted despite the summary nature because the appeal was from an interlocutory order in a probate proceeding which is appealable by right. See Richardson, 2002 OK CIV APP 69, ¶ 1 n.1.[3] The Richardson Court nevertheless approved of the summary procedure in the probate proceeding, and applied the summary judgment standard of review in its analysis.

¶12 Further, Davis was decided before the Oklahoma Supreme Court's decision in Jernigan v. Jernigan, 2006 OK 22, 138 P.3d 539. In Jernigan, the Supreme Court approved of the use of summary procedure in a probate proceeding, and applied the summary judgment standard of review in its analysis.[4] See also Glomset, 1976 OK 30, ¶¶ 3, 6 (The Oklahoma Supreme Court stated that where "there is only a question of law to be determined," the trial court may properly award summary judgment in a probate proceeding). Accordingly, we conclude the trial court did not err in determining it possessed the authority to award summary judgment in a probate proceeding.

STANDARD OF REVIEW

¶13 As stated by the Oklahoma Supreme Court:

Summary process - a special pretrial procedural track pursued with the aid of acceptable probative substitutes - is a search for undisputed material facts which, sans forensic combat, may be utilized in the judicial decision-making process. Summary relief is permissible where neither the material facts nor any inferences that may be drawn from uncontested facts are in dispute, and the law favors the movant's claim or liability-defeating defense. Only those evidentiary materials which eliminate from trial some or all fact issues on the merits of the claim or defense afford legitimate support for nisi prius resort to summary process for a claim's adjudication.

Summary relief issues stand before us for de novo review. All facts and inferences must be viewed in the light most favorable to the non-movant. Just as nisi prius courts are called upon to do, so also appellate tribunals bear an affirmative duty to test for its legal sufficiency all evidentiary material received in summary process as support for the relief received by the movant. Only if the court should conclude there is no material fact (or inference) in dispute and the law favors the movant's claim or liability-defeating defense is the moving party entitled to summary relief in its favor.

Jernigan, ¶¶ 13-14 (footnotes omitted).

ANALYSIS

¶14 Through the years, numerous courts have grappled with the doctrine of equitable adoption. As stated by the North Carolina Supreme Court, in a case decided in 1997, "Thirty-eight jurisdictions have considered equitable adoption; at least twenty-seven have recognized and applied the doctrine." Lankford v. Wright, 489 S.E.2d 604, 606 (N.C. 1997). The Lankford Court further stated that, "[b]y its own terms, equitable adoption applies only in limited circumstances," and "[t]he doctrine is not intended to replace statutory requirements or to create the parent-child relationship; it simply recognizes the foster child's right to inherit from the person or persons who contracted to adopt the child and who honored that contract in all respects except through formal statutory procedures." Id.

¶15 The Lankford Court, citing 2 Am. Jur. 2d Adoption § 54 (1994), set forth the following elements as necessary to establish the existence of an equitable adoption:

(1) an express or implied agreement to adopt the child,

(2) reliance on that agreement,

(3) performance by the natural parents of the child in giving up custody,

(4) performance by the child in living in the home of the foster[5] parents and acting as their child,

(5) partial performance by the foster parents in taking the child into their home and treating the child as their own, and

(6) the intestacy of the foster parents.

Lankford, 489 S.E.2d at 606-07.

¶16 Although neither this Court nor the Oklahoma Supreme Court has addressed the doctrine of equitable adoption in a published opinion in over thirty years, the doctrine has been recognized and applied in Oklahoma. See, e.g., Clemons v. Clemons, 1943 OK 318, 145 P.2d 928; Eggstaff v. Phelps, 1924 OK 465, 226 P. 82; Crozier v. Cohen, 299 F. Supp. 563 (W.D. Okla. 1969). In Oklahoma, equitable adoption requires, first of all, "evidence of a binding contract for adoption whose existence must be established by clear and convincing proof." Byers v. Byers, 1980 OK 149, ¶ 7, 618 P.2d 930 (footnote omitted). Although such a contract need not be in writing, "[t]he evidence required to establish a contract of adoption must be clear, definite, and conclusive." Eggstaff, ¶ 0 (Syllabus by the Court). For example, in Clemons the Oklahoma Supreme Court stated that "[t]he existence of the contract for adoption . . . was the sine qua non without which plaintiff could not prevail and with respect to which she was required to produce clear, cogent, and convincing evidence." Clemons, ¶ 6 (citations omitted).[6]

¶17 The factual circumstances presented in the first case applying the doctrine in Oklahoma are instructive. In Eggstaff, an equitable adoption was recognized where a two-year old child's mother made an agreement with a woman that that woman raise the child. The birth mother relinquished all claim to her biological child and the child's name was changed to the last name of the "adopting" mother. The daughter was raised by the adopting mother until she was an adult and was not told of the arrangement until she was 14 years of age.

¶18 In the present case, it is undisputed that Respondent is the stepson of Decedent. In Weidner v. American Family Mutual Insurance Co., 928 S.W.2d 401, 402 (Mo. Ct. App. 1996), the court stated that,

In cases where it is a stepchild seeking equitable adoption from a stepparent, courts have looked for evidence of more than a stepchild/stepparent relationship, such as indicia of an intent or attempt to adopt. When such cases yield evidence of only a close stepchild/stepparent relationship, justice, equity and good faith do not require a finding of adoption. Otherwise, the numerous cases in which a stepchild is taken into the home of a stepparent and a close relationship develops would all give rise to equitable adoptions.

Id. at 403 (citations omitted). The Weidner Court described this as a "highly rigorous standard," which it concluded the stepchild in question had failed to meet despite evidence of "a close stepfather/stepdaughter relationship." Id. at 404.

¶19 Similarly, in In re Estate of Seader, 76 P.3d 1236 (Wyo. 2003),[7] the court declined to find an equitable adoption in a stepparent/stepchild situation, explaining as follows:

[T]he stepparent-stepchild relationship . . . calls for particular circumspection before recognizing an equitable adoption. Courts have seldom applied the doctrine of equitable adoption or its equivalents to treat a stepparent as an adoptive parent. . . . One reason is the appreciation that it is in the public interest for stepparents to be generous and loving with their stepchildren. Such conduct could be discouraged if a consequence of such kindness toward a stepchild would be the imposition on the stepparent of the legal incidents of parenthood, such as a duty to provide child support after divorce or a reallocation of the stepparent's estate after death.

Id. at 1246 (quoting Otero v. City of Albuquerque, 965 P.2d 354, 362 (N.M. App. 1998)).

¶20 We find these cases to be persuasive. Here, the contents of the transcript excerpt attached to Petitioner's motion for summary judgment support Petitioner's assertion that no contract for adoption was made.[8] Although Respondent states in the excerpt that he and Decedent "talked about [the possibility of Decedent adopting Respondent] one time," he admits that no agreement was reached and that Decedent believed adoption "was not necessary unless my mother wouldn't have it any other way." Respondent further states in the excerpt that he and Decedent

had a relationship, you know, and I guess he didn't need a piece of paper and I didn't either. At that time I just, you know, I didn't - I just wasn't looking - I just wasn't looking ahead I guess. You know, had I said the right things, maybe we wouldn't be sitting here today.

¶21 The transcript excerpt supports the inference that Decedent and Respondent had a close relationship; however, it also shows both that Decedent did not believe that Respondent was his adopted son, and that Decedent never contracted to adopt Respondent. In fact, because the discussion in question took place "a couple of years" after Respondent left the Marine Corps, it is also clear that Decedent never contracted to adopt Respondent as a child.

¶22 Respondent has attempted to rebut Petitioner's motion by attaching certain campaign fliers which support his assertion that "[Decedent] held [Respondent] out publicly as his son." However, even taking this assertion as true, and even assuming for purposes of summary judgment that Respondent and Decedent had a long and close relationship, Respondent has failed to rebut Petitioner's specific assertion that no contract for adoption was ever created. Especially in the context of a stepparent/stepchild relationship, which calls for "particular circumspection" and "highly rigorous standards" before recognition of an equitable adoption is appropriate, the lack of any dispute that Decedent failed to contract to adopt Respondent is dispositive. Consequently, we conclude the trial court did not err in granting Petitioner's motion for summary judgment.

CONCLUSION

¶23 We conclude the trial court properly found it possesses authority to award summary judgment in probate proceedings. In addition, we conclude the trial court did not err in granting Petitioner's motion for summary judgment, and in excluding Respondent as an heir at law. Consequently, we affirm the Orders.

¶24 AFFIRMED.

RAPP, P.J., and THORNBRUGH, J., concur.

 

FOOTNOTES

[1] In addition, one Elisha McGahey also objected to the petition and asserted there exists a will of Decedent. However, the trial court found Decedent died intestate, and no issue regarding the existence of such a will has been raised on this appeal.

[2] The Davis Court stated:

Probate is a special statutory proceeding, controlled by the probate code, which moves along a procedural track vastly different from that followed by a regular civil action. See In the Matter of Holcomb, 2002 OK 90, ¶ 18 n.17, 63 P.3d 9, 14 n.17; Wilson v. Kane, Jr., 1993 OK 65, ¶ 6, 852 P.2d 717, 721-22. Probate proceedings are prescribed and limited by statute and unless a specific jurisdiction or power is given to the court, it does not exist. Wilson, 1993 OK 65, 852 P.2d 717; Lowrance v. Patton, 1985 OK 95, 710 P.2d 108.

Davis, ¶ 27.

[3] Here, the Oklahoma Supreme Court ordered on May 5, 2014, that "[t]his cause shall proceed as an appeal from an interlocutory probate order appealable by right. Rule 1.60(h) of the Oklahoma Supreme Court Rules, 58 O.S. § 721." The May 5, 2014 order also notes the requirement of briefs, which are ordinarily not allowed in the accelerated procedure typically applied to appeals from summary judgments.

[4] The Jernigan Court set forth the same general principle set forth in Davis regarding the "vastly different" procedural track followed in probate proceedings. Jernigan, ¶ 17. However, in addressing the issue of whether the probate court lacked jurisdiction to decide a replevin suit brought as part of the probate proceeding, we note that the Jernigan Court emphasized that probate "begins and ends in the district court," and although "interdivisional remedial boundaries survive," these boundaries "must be accepted as no more than a procedural demarcation line separating different remedial regimes rather than be treated as tightly separated jurisdictional compartments." Id. (emphasis omitted). The Jernigan Court stated that

the district court - in all of its divisions - constitutes an omnicompetent, single-level, first-instance tribunal with "unlimited original jurisdiction of all justiciable matters . . . ." That broad, constitutionally-conferred jurisdictional sweep is indivisible, even though the court's day-to-day exercise of authority stands carved into several separate divisional compartments.

Id. ¶ 16 (emphasis omitted) (footnotes omitted). "The district court divisions have equal capacity and power and are restricted only by their statutory remedial range." Id. ¶ 18 (footnote omitted). The Jernigan Court concluded that "the replevin's remediability in probate is a nonjurisdictional issue," and "[t]he correct method for challenging the remediability of a claim filed in probate is not by motion to dismiss or by a plea to the jurisdiction, but rather by motion to transfer the cause to another division." Id. ¶¶ 18-19 (footnote omitted).

[5] The Lankford Court specified that, "[a]s used here, the term 'foster' means 'giving or receiving parental care though not kin by blood or related legally.'" Id. at 606 n.1 (citation omitted).

[6] In addition to citing to Crozier, Clemons, and Eggstaff, the Byers Court cited to the "anno[tations] in 97 A.L.R.3d 347 on Modern Status of Law as to Equitable Adoption or Adoption by Estoppel (1980)." Byers, ¶ 7 n.7. The A.L.R. entry cited by the Byers Court was subsequently superseded by Tracy Bateman Farrell, Annotation, Modern Status of Law as to Equitable Adoption or Adoption by Estoppel, 122 A.L.R.5th 205 (2004), which provides, in part, as follows:

Where the doctrine of equitable adoption is recognized in concept, for whatever purpose, it is clear that the most important prerequisite to application of the doctrine in most states is proof that a contract of adoption was entered into between the foster parent and the child's natural parent or some individual or institution standing in loco parentis. In most of the cases in which an equitable adoption has been found to exist, . . . the courts have tended to emphasize the making of such a contract. By the same token, in most of the cases in which an equitable adoption has been determined not to exist, . . . the courts have focused on the absence of a contract to adopt.

Id. § 2[a].

[7] As noted by the trial court in its March Order, Seader is the only case cited by Respondent in his response to Petitioner's motion for summary judgment.

[8] We note that Respondent does not challenge the authenticity or admissibility of this transcript excerpt.






 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2002 OK CIV APP 69, 50 P.3d 584, IN THE MATTER OF THE ESTATE OF RICHARDSON
Discussed at Length
 1995 OK CIV APP 114, 905 P.2d 833, 66 OBJ 3514, Estate of Ringwald, Matter of
Discussed
 2006 OK CIV APP 31, 132 P.3d 609, IN THE MATTER OF THE ESTATE OF DAVIS
Discussed at Length
 1999 OK CIV APP 45, 980 P.2d 665, 70 OBJ 1375, In the Matter of the Estate of Gertrude Jo Geller
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1993 OK 65, 852 P.2d 717, 64 OBJ 1497, Wilson v. Kane
Discussed at Length
 2002 OK 90, 63 P.3d 9, IN THE MATTER OF THE ESTATE OF HOLCOMB
Discussed
 2006 OK 22, 138 P.3d 539, JERNIGAN v. JERNIGAN
Discussed
 1924 OK 465, 226 P. 82, 99 Okla. 54, EGGSTAFF v. PHELPS
Discussed
 1976 OK 30, 547 P.2d 951, ESTATE OF GLOMSET
Discussed at Length
 1980 OK 149, 618 P.2d 930, Byers v. Byers
Discussed
 1943 OK 318, 145 P.2d 928, 193 Okla. 412, CLEMONS v. CLEMONS
Discussed
 1985 OK 95, 710 P.2d 108, 56 OBJ 2786, Lowrance v. Patton
Discussed
Title 58. Probate Procedure
 Cite
Name
Level

 58 O.S. 721, Appealable Judgments and Orders of District Court
Cited