Wood, J.
The case, it will be seen, is presented, by the pleadings, with the parties directly at issue on every material point which constitutes the gist of the complaint. The onus probandi lies, therefore, on the complainant, and the maxim, secundum allegata et probata, adapts itself to every jurisdiction, and to every civil action. Keeping these familiar principles in view, the proofs must be first applied, and then comes in the law, which sweeps away the foundation on which the structure rests, o.' it extends tho’ *89 relief, which its wisdom has provided, as peculiarly adapted to the individual ease.
The complainant states that, in 1816, Hargraves and wife rented him the ground in controversy, during the life of the feme. That he entered and occupied until 1834, when he was dispossessed by Worthington. Hargraves, it appears, was seized in right of his wife, the lot being set off to her, as her right of dower, in the estate of Cutler. From the face of the pleadings, the question then arises, why is Young, the complainant, in this court? Having the right of possession, why did he not defend under his lease, in the ejectment brought against him by Worthington? For in ejectment there is no right of action, unless there is a right also of possession, which may be delivered under an habere facias possessionem. This is, however, explained by an inspection of the lease, an exhibit in the case, from which it appears not to have been acknowledged nor accompanied with a separate examination, and being executed by a feme covert, it passed to the lessee nothing but a freehold for the life of the husband, who died in February, 1833. Worthington v. Young, 6 Ohio, 313.
The rights of the complainant ceased, therefore, by the expiration of his term, with the death of Hargraves, and after that period he was a mere tenant by sufferance, and liable to be evicted by Worthington. These facts but illy sustain the complainant’s allegation in his bill, that the lease conveyed to him the interest in the premises during the life of Mrs. Hargraves? But to %,void this aspect of the case, the complainant shifts his [89 ground, as claiming exclusively under the lease, and sets up an agreement by Hargraves and wife, before the sale to Miller, by which he was to have the lot during the life of the wife, on paying the rent to Miller or his vendee; and of this agreement Miller is charged with having full knowledge, and to have received instructions so to draw the conveyance as to reserve Young’s right to the freehold during the life of Mrs. Hargraves ; but the deed, either by the mistake or the design of Miller, was not so drawn, but a clause inserted, merely reserving to the tenant in possession uhis legal rights,” and which Miller assured all concerned, and which was believed to reserve a freehold in the complainant during Mrs. Hargraves’ life. These allegations of agreements, mistakes, designs, instructions about preparing the deedj assurances, and impositions are all denied by the respondent, *90 Miller; but they are directly proved by both Mrs. Hargraves and her son. Their testimony is also sustained by that senseless clause in the lease before cited, which secures nothing to any one, but appears to have been placed there for some purpose, and probably to quiet the fears of the complainants and Mr. and Mrs. Hargraves, in relation to the complainant’s supposed interest. It is said, however, that Mrs. Hargraves is not a competent witness. "We do not see any force in the objection. If she is a'warrantor of title to Miller, she is swearing against her interest when she sustains the right of the complainant; but if a warrantor, her covenant of warranty was during coverture, and is therefore void-Notice of Young’s claim, by Miller, is also proved by Thoms. Notice to Worthington is not so clear, and there is no evidence to prove notice to Phillips or Gwynne, before their purchase, but what arises from the complainant’s lease, and the clause in the deed to Miller, “reserving to the tenants in possession their legal rights." Young can not reach Phillips and Gwynne, because they are bona fide purchasers witiiout notice. But he is entitled to a decree against Miller and Worthington for a pecuniary consideration. Eor, though notice to Worthington is not so clear, we in-90] cline to *the opinion the evidence is sufficient to establish it, and the complainant is, in like manner, entitled to a decree against Worthington to enjoin the judgment for mesne profits, and to call him to an account for the rents and profits, after Young was evicted-That is, he, the complainant, is entitled to such decrees, provided the law as well as the facts are with him. We are compelled to say, however, in this respect the complainant appears to us to be less fortunate. We do not intend to impugn the principles settled in the case of Hunt v. Rousmanier, 1 Story’s Eq. 129, “ that wherever by mistake of the draftsman, or otherwise, either of fact or law, an instrument does not fulfill the intention of the parties, but violates it, equity will correct the mistake, so as to produce a conformity in the instrument.” This is doubtless sound law, and should be applied in all analogous cases. But in the case at bar, the complainant can not correct the lease of 1816, under which he occupied, so as to conform to the intentions of the parties, by conveying to him an estate for the life of Mrs. Hargraves, for it was never obligatory on her, neither in law nor equity. Not in law, because it was not executed according to the provisions of the statute. Notin equity, because her agreement to convoyan es *91 tate for her life was during her coverture, and therefore is not binding upon her; nor is she a party to this suit.
Is, then, the case' made by the complainant sustainable on the agreement set up in the bill, at the time of the sale to Miller, that Young’s estate was to be reserved in the deed ? There'was at that time no such estate created. There was, it is true, such an intention to create such estate, and a parol contract; but there was no possession taken under it, nor any one circumstance transpired to take the contract out of the statute of frauds. If Mrs. Hargraves was complainant, to reinvest herself of that of which she has been divested by the mistake or fraud set up in the bill, the case might perhaps be different. But what equitable right has the complainant as the case stands? His equity is neither more nor less than the mere intention of Mr. and Mrs. Hargraves, that he should have an estate in the premises for her life. An intention not carried *into grant, not even into such a contract as the law [91 santions as obligatory. The most that can possibly be made out of it seems to us to be but an equitable reservation of the ground occupied by the complainant, in Mrs. Hargraves during her life> which it is possible she may hereafter enforce, in some form, against some one. She may, probably, reinvest herself with the legal title, for her life, provided she can charge the vendee in possession with notice of such equitable reservation. She may then convey to the complainant, and there may be a moral, but no legal consideration is perceived, to induce such conveyance. Broad as the principles of equity may be, they can not be brought to aid the complainant, in a case like the present. The bill must be dismissed with costs.
Bill dismissed.