OSCN Found Document:ELDREDGE v. TAYLOR

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 Court Dockets

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 ELDREDGE v. TAYLOR
2014 OK 92
Case Number: 113018
Decided: 11/12/2014
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2014 OK 92, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

JULIE ELDREDGE, Plaintiff/Appellant,
v.
KAREN TAYLOR, Defendant/Appellee.

ON APPEAL FROM THE DISTRICT COURT OF CANADIAN COUNTY,
THE HONORABLE GARY MCCURDY, PRESIDING

¶0 Partners in a civil union signed co-parenting agreements designating Plaintiff as the parent of Defendant's two biological children. Upon their separation and dissolution of the civil union, Plaintiff continued to act as a parent for the children. Defendant removed the children from Plaintiff's care, changed their last names, and planned to remove the children from Oklahoma. Plaintiff petitioned the District Court in Canadian County, Oklahoma, for a determination of her parental rights, inter alia. The district court granted Defendant's motion to dismiss. Plaintiff appealed. This Court retained the appeal.

DISTRICT COURT'S JUDGMENT REVERSED;
REMANDED WITH INSTRUCTIONS.

Melody Huckaby Rowlett, Rowlett Law Office, PC, Oklahoma City, Oklahoma, for the appellant.
Candee R. Wilson, Norman, Oklahoma, and Cathy C. Barnum and Kelley Bodell, Barnum & Clinton, PLLC, Norman, Oklahoma, for the appellee.

TAYLOR, J.

¶1 The only issue presented for this Court's consideration is whether the trial court erred in granting the defendant's motion to dismiss for want of jurisdiction based on the plaintiff's lack of standing. Questions within the issue are (1) whether a person has standing to seek a best-interest-of-the-child hearing when the sole biological parent relinquished some of her parental rights to the person by entering into a written co-parenting agreement; (2) whether the doctrine of in loco parentis can extend to a person who is not legally related to a child when there is no allegation the sole biological parent is unfit; (3) whether Title 10, Section 7700-204(A)(5) of the Oklahoma Statutes creates a presumption of parentage in a woman who holds herself out as a parent and resides with a child for at least two years; and (4) whether a person who is not legally related to a child can have a constitutionally protected liberty interest in her relationship with children she has helped bring into the world and has continued to raise and support or, alternatively, whether children have a constitutionally protected liberty interest in their relationship with such a person. Because we need to find standing under only one theory and we answer the first question in the affirmative, we need not address the other three questions. We find that the trial court erred in granting the motion to dismiss.

¶2 This is an issue of first impression in Oklahoma. The unique facts here are that a sole biological parent chose to conceive children with the intent that her partner in a civil union would share the rights and duties of parentage, put this intent into writing, nurtured her partner's relationship with the children for years, severed the parent-child relationship for no apparent reason, and now seeks to deny her partner standing to contest parentage, visitation, and custody in a best-interest-of-the-child hearing.

I. STANDARD OF REVIEW

¶3 A trial court's judgment dismissing a petition is reviewed de novo. Wilson v. State ex rel. State Election Bd., 2012 OK 2, ¶ 4, 270 P.3d 155, 157. When ruling on a motion to dismiss for lack of standing, the trial court and the appellate court must accept the petition's allegations and all inferences that can be drawn from them as true. Id.; Okla. Educ. Ass'n v. State ex rel. Okla. Legislature, 2007 OK 30, ¶ 10, 158 P.3d 1058, 1063. The party seeking relief has a greater burden to show she has standing in later stages of the proceedings than when defending a pretrial motion to dismiss. Okla. Educ. Ass'n, 2007 OK 30, ¶ 10, 158 P.3d at 1063. This case also involves a determination of public policy. Generally, the determination of public policy is a question of law. Shero v. Grand Sav. Bank, 2007 OK 24, ¶ 5, 161 P.3d 298, 300. The party seeking to void a contract bears the burden of proving that the contract violates public policy. Horn v. Gibson, 1909 OK 174, ¶ 0, 103 P. 563, 563 (Syllabus by the Court).

II. ALLEGATIONS AND PROCEEDINGS

¶4 Keeping in mind the standard of review, we now turn to the plaintiff's allegations. The defendant does not contest these facts but deems them irrelevant based on her constitutional rights as a parent. The plaintiff, Julie Eldredge (Eldredge), and the defendant, Karen Taylor (Taylor), committed to and lived together in a family relationship from May 19, 2001, until April 2011. In 2005, the parties entered into a civil union in New Zealand. Two children were born into this civil union. The parties purchased a home together in anticipation of the children's births. The parties agreed to and planned the conception of the children using an anonymous sperm donor with Taylor as the biological mother. Eldredge supported Taylor through both pregnancies and was present during the artificial insemination, subsequent doctor appointments, and each child's birth.

¶5 The children were born in Oklahoma on July 31, 2007, and July 8, 2008, and were given the family name of Eldredge at birth. To guarantee that both parties would be considered natural, legal, and acknowledged parents, the parties entered into co-parenting agreements following the birth of each child (collectively "the Agreements"). In accordance with the Agreements, both parties were given parental rights and shared parenting responsibilities. Eldredge played the role of caregiver, assuming responsibility for the children's care, education, and development. Eldredge publicly acknowledged the children as hers. Taylor held out Eldredge as the children's mother to family members, government personnel, and the children. Taylor also held out Eldredge's family as the children's family. The children formed a parental relationship with Eldredge and formed an emotional attachment to her and her family. Eldredge executed a will that explicitly disinherited her family and benefitted the children.

¶6 The parties separated in April 2011. Without notifying Eldredge, Taylor changed the children's surnames to Taylor on May 23, 2011. The parties briefly reconciled, but did not cohabitate after January 2012. In June 2013, the parties dissolved their civil union in New Zealand. The parties continued to share parenting responsibilities equally upon their separation and after the dissolution of their civil union. Specifically, Eldredge paid Taylor an average of $763.29 per month in child support (which Taylor accepted), cared for the children, enrolled them in school, provided them her home, and was named as a parent on school and medical documentation. On January 15, 2014, Taylor removed the children from Eldredge's care and made plans to remove them from Oklahoma.

¶7 On February 4, 2014, Eldredge petitioned the district court for the following relief: (1) adopt the Agreements as a court order, (2) determine her to be a legal parent of the children, (3) grant her joint custody with a shared parenting plan, (4) return the children's surnames to Eldredge, (5) set child support pursuant to the Child Support Guidelines, (6) issue a temporary order granting custody to Eldredge, and (7) deny the children egress from the country. The district court issued an ex parte temporary emergency custody order prohibiting either party from removing the children from the state.

¶8 Taylor filed a motion to dismiss arguing that Eldredge lacked standing, the district court lacked subject matter jurisdiction, and the statute of limitations had run.[1] The trial judge sustained the motion and revoked the ex parte temporary emergency custody order. Eldredge appealed. We retained the appeal.

III. STANDING AND ARGUMENTS

¶9 Standing determines whether a person is a proper party to seek an issue's adjudication without deciding the issue itself. Estate of Doan v. First Nat'l Bank & Trust Co. of Tulsa, 1986 OK 15, ¶ 7, 727 P.2d 574, 576. The threshold criteria of standing are

(1) a legally protected interest which must have been injured in fact- i.e., suffered an injury which is actual, concrete and not conjectural in nature, (2) a causal nexus between the injury and the complained-of conduct, and (3) a likelihood, as opposed to mere speculation, that the injury is capable of being redressed by a favorable court decision.

Fent v. Contingency Review Bd., 2007 OK 27, ¶ 7, 163 P.3d 512, 519-20. "[S]tanding to raise issues in a proceeding must be predicated on [an] interest that is 'direct, immediate and substantial.'" Estate of Doan, 1986 OK 15, ¶ 7, 727 P.2d at 576. "The key element is whether the party whose standing is challenged has sufficient interest or stake in the outcome." Id. It is axiomatic that if the allegations are taken as true, Eldredge suffered an injury in fact--the deprivation of the Agreements' benefits and a relationship with the children with whom she had developed a parental relationship. There certainly is a causal nexus between this injury and Taylor's action in withholding contact between the children and Eldredge, thereby allegedly breaching the terms of the Agreements. Eldredge has a sufficient interest in the outcome to properly litigate the issues. The only question is whether Eldredge's injury is redressable by the court.

¶10 In her petition in error, Eldredge claims that she has a legally protected interest whereby she has standing based on her status (1) as a parent under a gender-neutral reading of the provision establishing the presumption of paternity found in the Oklahoma Uniform Parentage Act (OUPA), 10 O.S.2011, § 7700-204(A)(5); (2) as a third party acting in loco parentis[2] or as a de facto or psychological parent; (3) as a party to an enforceable co-parenting agreement; and (4) as a parent with a constitutionally protected interest in parenting the children. Eldredge requests that this Court reverse and remand to the district court for a hearing to establish parentage, custody, and visitation based on the best interests of the children. Eldredge admits that any relief must be granted pursuant to a best-interest-of-the-child hearing in the district court.

¶11 Taylor contends that Eldredge has no legally protected interest in custody or visitation with the children in that (1) Eldredge lacks standing because she is a legal stranger to the children and, thus, has no legally cognizable interest absent an allegation of Taylor's unfitness; (2) Oklahoma does not recognize equitable theories of parentage in the presence of a fit parent; and (3) the Agreements are illegal and unenforceable as against public policy. Taylor does not contend that Eldredge is an unfit parent.

A. Eldredge's Standing Under the Co-parenting Agreements

¶12 Given Eldredge's admission that she is seeking a best-interest-of-the-child hearing, this Court need only find that Eldredge has standing under one of her theories; the remaining theories need not be addressed. Eldredge contends that she has standing to enforce the Agreements or, at a minimum, to seek a hearing on the best interests of the children. We have found that a party has standing to seek enforcement of a contract that was void as against public policy. Huber v. Culp, 1915 OK 366, ¶ 0, 149 P. 216, 216 (Syllabus by the Court 1) (holding that a clause in a contract between husband and wife which prohibits either spouse from defending a divorce action in court is void against public policy).

¶13 Taylor contends that the Agreements, or contracts, are unenforceable because they are contrary to an express provision of law and public policy. 15 O.S.2011, § 211(1)-(2).[3] Specifically, Taylor argues that Oklahoma public policy is "for a child to have one mother, one father, or both, but not to have any other combination of parents," citing the prohibition on same-sex marriage, Okla. Const. art. 2, § 35,[4] and the Oklahoma Adoption Code (Adoption Code) provision listing persons eligible to adopt a child, 10 O.S.2011, § 7503-1.1.[5]

¶14 As the party seeking to void a contract, Taylor bears the burden of proving that the Agreements violate public policy. Horn v. Gibson, 1909 OK 174, ¶ 0, 103 P. 563, 563 (Syllabus by the Court). Taylor's reliance on the Oklahoma Constitution's ban on same-sex marriage is misplaced. The United States Court of Appeals for the Tenth Circuit recently struck down as unconstitutional Article 2, Section 35's ban on same-sex marriage. Bishop v. Smith, 760 F.3d 1070 (10th Cir.), cert. denied, 83 U.S.L.W. 3102 (U.S. Oct. 6, 2014). When the United States Supreme Court denied the petition for a writ of certiorari, the Tenth Circuit opinion became final and enforceable. Fed. R. App. P. 41(d)(2)(D), 28 U.S.C.A. We will not find a statement of public policy within an unconstitutional provision, either statutory or constitutional. See Huber v. Culp, 1915 OK 366, ¶ 8, 149 P. 216, 218-19 ("The power of the court to declare a contract void as being in contravention of public policy is a very delicate and undefined power, and should be exercised only in cases free from doubt.").

¶15 Likewise, Taylor's reliance on the Adoption Code is misplaced. The Adoption Code specifically allows adoption by "[a]n unmarried person who is at least twenty-one (21) years of age." 10 O.S.2011, § 7503-1.1. Section 7503-2.1 of the Adoption Code allows a single parent under certain circumstances which appear to be present here to consent to the adoption of her child. The Adoption Code does not place any restriction on the gender of the person adopting the child. Taylor fails to point to any place in the Adoption Code which bans adoption by a person of the same gender as a sole biological parent, and we find no such public policy in the Adoption Code.

¶16 Finally, Taylor asks this Court to find that the Agreements are contrary to Oklahoma laws on parentage and artificial insemination, but fails to cite to specific provisions of law. Argument without supporting authority will not be considered on appeal. Sup. Ct. R. 1.11(k)(1), 12 O.S.2011, ch. 15, app. 1. We find that the Agreements do not violate Oklahoma law or public policy, and thus are legal and enforceable.

¶17 Taylor has failed to direct this Court to any public policy which would cause the Agreements to be unenforceable. In fact, Oklahoma has a public policy of allowing parents to relinquish all or some of their parental rights without terminating those rights. As stated above, the Adoption Code allows parents to consent to sharing or relinquishing all or some of their parental rights. For instance, a surviving parent or a sole legal parent may consent to a third-party adoption without the legal parent terminating her parental rights. 10 O.S.2011, § 7503-2.1(A)(2). Just as step-parents may adopt a spouse's child, so may a same-sex partner adopt a partner's child. This public policy of allowing parents to share custody and control of their child by consent with a non-parent is found in the newly enacted Title 10, Sections 700 to 701 of the Oklahoma Statutes. Although not in effect when the parties executed the Agreements, in the 2014 session, the Oklahoma Legislature recognized a public policy in favor of a parent sharing some or all child-rearing responsibilities with another person regardless of gender. 10 O.S.Supp. 2014, §§ 700 to 701. Section 700(A) provides:

A parent or legal custodian of a child, by a properly executed power of attorney provided in Section 2 of this act, may delegate to another person, for a period not to exceed one (1) year, any of the powers regarding the care and custody of the child, except the power to consent to marriage or adoption of the child, the performance or inducement of an abortion on or for the child, or the termination of parental rights to the child. A delegation of powers under this section shall not deprive the parent or legal custodian of any parental or legal authority regarding the care and custody of the child.

¶18 We find only one area where the Agreements' specific provisions may be void as against public policy: that is if they contravene the best interests of the children. Oklahoma has a strong public policy that custody and care of children should be based on their best interests. See 10 O.S.2011, § 90.4(B) (best-interest-of-the-child finding necessary for changing name of children born out of wedlock); id. § 1116.3(A)(2)(a) (requiring a finding that, on review, out-of-home placement in the best interest of child allegedly deprived); id. § 7501-1.2(A)(1) (Adoption Code's purpose to ensure and promote best interest of the child); id. § 7503-2.7(B) (allowing permanent relinquishment or consent to adoption to be set aside only if in the minor's best interest); id. § 7505-1.5 (finding of best interest of child necessary before entry of visitation agreement between birth and adoptive parents); id. § 7505-5.2 (pre-adoption home study waived upon finding in best interest of the child among other things); id. § 7505-6.3(F) (entry of final adoption decree after court satisfied adoption in best interest of child); 43 O.S.2011, § 109 (in divorce proceedings, custody based on best interest of the child); id. § 109.1 (custody during parents' separation based on best interest of the child); id. § 109.4(A)(1)(a), (b) (grandparental visitation authorized if in best interest of the child); id. § 112 (in divorce, legal separation, or annulment proceeding, custody based on best interest of the child). Thus, any scrutiny of the Agreements must be based on whether the provisions are in the best interests of the children.

B. The Co-parenting Agreements Do Not Violate 
Taylor's Parental Autonomy

¶19 Taylor cites Troxel v. Granville, 530 U.S. 57 (2000), for the proposition that she is afforded absolute parental autonomy by virtue of the federal constitution[6] and that absent a showing of unfitness, no third party may challenge her parentage. Taylor misreads Troxel.[7] In Troxel, the grandparents of the child's deceased father sought visitation more than what the surviving parent was willing to allow. Id. at 61. The visitation statute at issue in Troxel allowed anyone to seek visitation rights at any time without a showing of parental unfitness, without giving any deference to a fit parent's decision, and with the only requirement that the visitation would serve the best interest of the child. Id. at 67. The United States Supreme Court recognized a parent's constitutional right to make decisions regarding their children's custody and upbringing. Id. at 65-66. There is a presumption that parents act in their children's best interests. Id. at 68-70. The Court did not hold that this presumption is irrebuttable or that a fit parent's decision regarding their children is inviolate. Rather, the Court considered the lack of special factors that would justify state interference with the parent's fundamental right to make decisions concerning the rearing of her children, id. at 68, and that there was no allegation that Granville ever sought to cut off visitation entirely. Id. at 71. The Court was particularly troubled that the trial court gave no special weight to the parent's determination, but burdened the parent with showing that the additional grandparental visitation would adversely impact the children. Id. at 69. The Court refused to "hold that specific nonparental visitation statutes violate the Due Process Clause as a per se matter." Id. at 73-74. The Court concluded that "if a fit parent's decision of the kind at issue here becomes subject to judicial review, the court must accord at least some special weight to the parent's own determination." Id. at 70.

¶20 Unlike Troxel, we are not faced here with a situation devoid of special factors that would preclude state interference. Eldredge's factual allegations establish that she has more than a sufficient basis to request a best-interest-of-the-child hearing. As a parent, Taylor is presumed to have acted in the best interests of the children when she conceived the children with the intent that Eldredge would be for all practical purposes a parent to the children. Likewise, Taylor is presumed to have acted in the best interests in the children when she acted in a manner consistent with that intent--she executed Agreements in which she allegedly consented to sharing her parental authority over the children, she encouraged a parental relationship between Eldredge and the children, she held Eldredge out to the world as the children's parent, and she accepted Eldredge's financial and emotional support as a parent even after they separated. These special factors justify state interference into Taylor's decision to withdraw all of Eldredge's contact with the children. However, consistent with Troxel, on remand, the district court must place the burden on Eldredge of showing that the valid contractual provisions that she seeks to enforce are in the children's best interests.

IV. CONCLUSION 

¶21 The unique and compelling facts of this case make it difficult to create a general rule. Thus, this decision is limited to the facts before us and should not be read to extend rights to step-parents, grandparents, or others. Here, a mother entered into a civil union with her long-time partner; purposefully engaged in family planning requiring complicated and costly biological and legal arrangements with the intent of sharing the rights and responsibilities of parenthood with her partner; committed this intent to writing; and, for years, reaffirmed this intent by accepting financial and emotional support from her partner and actively nurturing the relationship between her partner and the children. The public policy of this State mandates that the district court consider the best interests of the children before they lose one of the only two parents they have ever known. Thus, we find that the district court erred in granting the motion to dismiss.

DISTRICT COURT'S JUDGMENT REVERSED; REMANDED WITH INSTRUCTIONS.

CONCUR: COLBERT, C.J.; REIF, V.C.J.; and KAUGER, WATT, WINCHESTER, EDMONDSON, TAYLOR, and GURICH, JJ.

CONCURS IN RESULT: COMBS, J.

FOOTNOTES

[1] In the trial court, Taylor argued that Eldredge is barred from claiming that she is a presumed parent under the Oklahoma Uniform Parentage Act (OUPA), 10 O.S.2011, § 7700-204(A)(5), by the two-year limitation in presumed father proceedings. Id. § 7700-607(A). Because we grant Eldredge relief under her contractual claim and do not address her OUPA claims, we need not decide this question. Eldredge is within the five-year statute of limitations for a cause of action arising out of a written contract. 12 O.S.2011, § 95.

[2] This Court defined the term in loco parentis as in place of a parent and recognized that a person acting in loco parentis is "one who has assumed the status and obligations of a parent without a formal adoption." Matter of B.C., 1988 OK 4, ¶ 19, 749 P.2d 542, 545.

[3] Title 15, Section 211 of the Oklahoma Statutes makes unlawful, and thus unenforceable, contracts which are (1) "[c]ontrary to an express provision of law;" (2) "[c]ontrary to the policy of express law, though not expressly prohibited; or" (3) "[o]therwise contrary to good morals."

[4] Article 2, Section 35 of the Oklahoma Constitution provides:

A. Marriage in this state shall consist only of the union of one man and one woman. Neither this Constitution nor any other provision of law shall be construed to require that marital status or the legal incidents thereof be conferred upon unmarried couples or groups.
B. A marriage between persons of the same gender performed in another state shall not be recognized as valid and binding in this state as of the date of the marriage.
C. Any person knowingly issuing a marriage license in violation of this section shall be guilty of a misdemeanor.

[5] Title 10, Section 7503-1.1 of the 2011 Oklahoma Statutes provides:

The following persons are eligible to adopt a child:

1. A husband and wife jointly if both spouses are at least twenty-one (21) years of age;
2. Either the husband or wife if the other spouse is a parent or a relative of the child;
3. An unmarried person who is at least twenty-one (21) years of age; or
4. A married person at least twenty-one (21) years of age who is legally separated from the other spouse.

[6] Although Taylor asserts her rights under the Oklahoma Constitution, as well as the federal constitution, she fails to provide any legal authority in support of her position. Argument without supporting authority will not be considered on appeal. Sup. Ct. R. 1.11(k)(1), 12 O.S.2011, ch. 15, app. 1.

[7] Troxel was a plurality opinion. This Court has recognized that the factors underlying the plurality opinion were also found troubling to two of the concurring opinions. Craig v. Craig, 2011 OK 27, ¶ 21, 253 P.3d 57, 62-63; Neal v. Lee, 2000 OK 90, ¶¶ 5-7, 14 P.3d 547, 549-50. Neither the plurality opinion nor the concurring opinions is authority for Taylor's position that unfitness is the test before a Court can grant visitation to a third party.

 






 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 1988 OK 4, 749 P.2d 542, 59 OBJ 182, B.C., Matter of
Discussed
 1915 OK 366, 149 P. 216, 46 Okla. 570, HUBER v. CULP
Discussed at Length
 1909 OK 174, 103 P. 563, 24 Okla. 481, HORN v. GIBSON
Discussed at Length
 2000 OK 90, 14 P.3d 547, 71 OBJ 2924, NEAL v. LEE
Discussed
 2007 OK 24, 161 P.3d 298, SHERO v. GRAND SAVINGS BANK
Discussed
 2007 OK 27, 163 P.3d 512, FENT v. CONTINGENCY REVIEW BOARD
Discussed
 2007 OK 30, 158 P.3d 1058, OKLAHOMA EDUCATION ASSOCIATION v. STATE ex rel. OKLAHOMA LEGISLATURE
Discussed at Length
 2011 OK 27, 253 P.3d 57, CRAIG v. CRAIG
Discussed
 2012 OK 2, 270 P.3d 155, WILSON v. STATE ex rel. STATE ELECTION BOARD
Discussed
 1986 OK 15, 727 P.2d 574, 57 OBJ 993, Estate of Doan, Matter of
Discussed at Length
Title 10. Children
 Cite
Name
Level

 10 O.S. 7700-204, Presumption of Paternity - Rebuttal
Discussed
 10 O.S. 700, Power of Attorney for Care and Custody of Child - Effect of Delegation of Powers - Revocation
Cited
 10 O.S. 90.4, Changing Child's Name to Paternal Surname
Cited
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 95, Limitation of Other Actions
Cited
Title 15. Contracts
 Cite
Name
Level

 15 O.S. 211, Unlawful Contracts
Cited
Title 43. Marriage
 Cite
Name
Level

 43 O.S. 109, Best Interest of Child Considered in Awarding Custody or Appointing Guardian - Joint Custody - Plan - Arbitration
Cited