GUZMAN v. GUZMAN



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:GUZMAN v. GUZMAN

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 GUZMAN v. GUZMAN
2021 OK 26
Case Number: 117918
Decided: 05/25/2021
As Corrected: June 9, 2021
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2021 OK 26, __ P.3d __

 

 

CARMEN GUZMAN, Petitioner/Appellant,
v.
ADRIEANNA GUZMAN, Respondent/Appellee.

ON CERTIORARI FROM THE COURT OF CIVIL APPEALS, DIVISION II 

¶0 Respondent/Appellee Adrieanna Guzman (Adrieanna), an adoptive parent of a minor child, seeks review on certiorari of a published opinion by the Court of Civil Appeals, Division II, filed on January 6, 2020, reversing a decision by the Honorable Barbara Hatfield, District Judge, Canadian County. The trial court dismissed the petition for paternity filed by Petitioner/Appellant Carmen Guzman (Carmen) against her spouse Adrieanna Guzman. The child was adopted by Adrieanna, but was not adopted by Carmen. We hold Carmen, as a step-parent did not have standing, and we vacate the Court of Civil Appeals's opinion and affirm the trial court's order dismissing the petition for paternity.

CERTIORARI PREVIOUSLY GRANTED;
OPINION OF THE COURT OF CIVIL APPEALS VACATED;
ORDER OF THE DISTRICT COURT AFFIRMED. 

Lindsay W. Andrews, Oklahoma City, Oklahoma, for Appellant.

Scott A. Hester, Hester Schem Hester & Dionisio, Edmond, Oklahoma, for Appellee.

 

KANE, V.C.J.:

¶1 At issue on certiorari is whether the Court of Civil Appeals properly applied our laws on parental rights in a dispute between a married couple regarding custody and visitation with a minor child who was adopted by only one of the parties prior to marriage. We hold that it did not. The child was adopted by Respondent/Appellee Adrieanna Guzman (Adrieanna) prior to the marriage. Petitioner/Appellant Carmen Guzman (Carmen) never adopted the child. As a step-parent, Carmen has no standing to petition the court for paternity of the child. Thus, we vacate the Court of Civil Appeals's opinion and affirm the trial court's order granting Adrieanna's motion to dismiss.

I. FACTS AND PROCEDURAL HISTORY

¶2 The parties began their relationship in 2012. In 2015, one of Adrieanna's family members approached her about being a foster parent for their child who was to be placed in state custody upon birth. Adrieanna took physical custody of the child upon the child's release from the hospital in April 2015 and formally adopted the child on December 23, 2015.

¶3 On February 18, 2017, the parties married. It is undisputed that Carmen did not adopt the child. The parties separated in September 2018. On January 4, 2019, Carmen filed a petition for paternity seeking to establish her parental status and for a determination on custody and support. Adrieanna filed a petition for dissolution of marriage on January 11, 2019, wherein she alleged there were no children from the marriage.[1]

¶4 On January 28, 2019, Adrieanna filed a special entry of appearance and motion to dismiss in Carmen's paternity action asserting Carmen lacked standing and the trial court lacked subject matter jurisdiction to grant Carmen any custodial or visitation rights to the child who she never adopted. After a hearing on February 14, 2019, the trial court granted Adrieanna's motion to dismiss for lack of standing by journal entry filed on April 2, 2019. Carmen filed her accelerated appeal following the trial court's dismissal. The case was assigned to the Court of Civil Appeals on June 5, 2019. The Court of Civil Appeals applied this Court's recent decision in Schnedler v. Lee, 2019 OK 52, 445 P.3d 238, to the facts of this case and reversed the trial court's ruling. Adrieanna's petition for writ of certiorari immediately followed.

¶5 The sole remedy available from an erroneous decision of the Court of Civil Appeals is to petition the Supreme Court for a writ of certiorari.[2] See McMinn v. Okla. City, 1997 OK 154, ¶ 25, 952 P.2d 517, 523; Mehdipour v. Holland, 2000 OK 22, ¶ 9, 18 P.3d 339. The Supreme Court's power of certiorari review extends to every form of the Court of Civil Appeals' appellate cognizance. See May-Li Barki, M.D., Inc. v. Liberty Bank & Trust Co., 1999 OK 87, n. 22, 20 P.3d 135. We granted certiorari in this case to clarify our recent decision in Schnedler, specifically concerning its limited holding and limited application in paternity actions.

II. STANDARD OF REVIEW

¶6 The dismissal of a petition, including one for child custody and support, by the trial court is reviewed de novo. See Schnedler, 2019 OK 52, ¶ 11. When ruling on a motion to dismiss for lack of standing, the trial court and the appellate court must accept the petition's allegations and all inferences that can be drawn from them as true. See Eldredge v. Taylor, 2014 OK 92, ¶ 3, 339 P.3d 888.

III. DISCUSSION

A. Carmen is a Step-parent and Does Not Have Standing to Seek Paternal Rights of her Spouse's Child.

¶7 Under Oklahoma law, once the final decree of adoption was entered, Adrieanna had all the rights, duties, and legal consequences of a natural parent of the child. See 10 O.S.2011 § 7505-6.5(A). In general, the right of a parent to seek visitation of their child, upon separation or otherwise, derives from the right to custody. See Leake v. Grissom, 1980 OK 114 ¶ 8, 614 P.2d 1107, 1110.

¶8 Historically, in Oklahoma, step-parents have had extremely limited rights. See Byers v. Byers, 1980 OK 149, ¶ 11, 618 P.2d 930, 933 (step-parents have no parental rights or support obligations when the relationship terminates); Steinberg v. Frentz, 2002 OK CIV APP 94, ¶¶ 1-4, 57 P.3d 877 (step-parents have no rights under the doctrine of in loco parentis and no statutory rights to custody or visitation with a former spouse's child).[3] Because Oklahoma has no statutory provision specifically allowing step-parents to seek custody and/or visitation, step-parents have no right to seek custody or visitation with the child of a former spouse. The fact that a step-parent chooses to lovingly take another's child into his or her home during marriage has never been grounds to either clothe that party with parental rights (custody/visitation) or burden the party with parental obligations (child support). See 43 O.S.2011 § 112.4 ("A stepparent is not required to maintain his or her spouse's children from a prior marriage."). Conversely, if the parent of the child chooses to marry an individual, the parent should not be subjected to later finding out that the result of that marriage was the unintended ceding of parental rights to their spouse, the step-parent.

¶9 In the present case, Adrieanna was clothed by law with parental rights by virtue of the adoption. Carmen was legally married to Adrieanna and was a step-parent to the minor child. Thus, Carmen does not share the same rights to child custody and visitation as Adrieanna. Carmen, along with all other step-parents, has no statutory right to seek visitation with the child of a former spouse.

B. Schnedler's Limited Holding Does Not Apply

¶10 Our decision in Schnedler concerned a question of first impression in Oklahoma: whether our laws recognized a non-biological same-sex co-parent's right to seek custody and visitation on the same grounds as the legal, biological, same-sex co-parent when the couple was unable to legally marry in Oklahoma. Under those specific facts, we held that they must. See Schnedler, 2019 OK 52, ¶ 10. However, Schnedler is limited in nature and does not extend any additional rights to step-parents, grandparents, or others. Id. Schnedler does not apply to legally married couples.

¶11 Because parental rights have not been bestowed on step-parents via statute or the common law, Carmen has no standing to seek custody and visitation with the child. The Court of Civil Appeals appears to have applied Schnedler to the facts of this case solely because the parties were in a same-sex relationship. This was in error. We hold the trial court correctly granted Adrieanna's motion to dismiss Carmen's petition for paternity.

IV. CONCLUSION

¶12 Adrieanna solely adopted the child and is clothed by the law with parental rights by virtue of the adoption. After the adoption, the parties chose to marry. Carmen did not adopt the child. We hold Carmen, as a step-parent, has no standing or statutory rights to custody of the adopted child of her spouse. We vacate the opinion of the Court of Civil Appeals and affirm the trial court's order dismissing the case.

CERTIORARI PREVIOUSLY GRANTED;
OPINION OF THE COURT OF CIVIL APPEALS VACATED;
ORDER OF THE DISTRICT COURT AFFIRMED.

CONCUR: Darby, C.J., Kane, V.C.J., Kauger, Winchester (by separate writing), Edmondson, Combs and Rowe, JJ.

DISSENT: Gurich, J. (by separate writing).

FOOTNOTES

[1] Carmen filed a petition for paternity, Case No. FP-2019-1, in the District Court of Canadian County, Oklahoma, on January 4, 2019. Adrieanna filed a petition for dissolution of marriage, Case No. FD-2019-29, in the District Court of Canadian County, Oklahoma, on January 11, 2019. Carmen filed a counter-petition for dissolution of marriage and petition for paternity in response to Adrieanna's petition for dissolution of marriage.

[2] Neither party sought rehearing of the Court of Civil Appeals's decision. Once a timely petition for certiorari is pending, the Court of Civil Appeals lacks the constitutional power to either grant rehearing or withdraw its opinion which is the subject of the certiorari petition. See Collins v. Mid-Continent Pipeline Co., 1999 OK 56, ¶¶ 11-12, 6 P.3d 1050.

[3] "The term 'in loco parentis' means in the place of a parent, and a 'person in loco parentis' may be defined as one who has assumed the status and obligations of a parent without a formal adoption." Schnedler, 2019 OK 52, n. 5 (internal citations omitted).

 

 

Winchester, J., with whom Darby, C.J., Kauger and Combs, JJ. join, concurring specially:

¶1 The only issue presented for this Court's consideration is whether the district court correctly held Carmen lacked standing to pursue custody and visitation of Adrieanna's child. The Court correctly holds that Carmen does not have standing.

¶2 I write separately to clarify the current state of Oklahoma law regarding parental rights, including same-sex parental rights. A parental relationship is established two ways: biologically or by adoption. 10 O.S.2011, § 7700-201. This applies to all parental relationships, including same-sex parents.[1]

 

¶3 In the present case, Carmen's only avenue to establish a parental relationship is through adoption. We have previously explained that same-sex couples are eligible to adopt under Oklahoma's Adoption Code. See Eldredge v. Taylor, 2014 OK 92, ¶ 15, 339 P.3d 888, 893 (explaining the Adoption Code does not place any restriction on the gender of the person adopting the child).

 

¶4 Carmen could have adopted under Oklahoma's Adoption Code as Adrieanna's spouse pursuant to 10 O.S.2011, § 7503-1.1(2),[2] as long as Adrieanna consented to the adoption. However, only Adrieanna adopted the child and is vested with sole parental rights. Carmen therefore has no standing or statutory rights to custody of the child.

FOOTNOTES

[1] This Court in Schnedler v. Lee, 2019 OK 52, 445 P.3d 238, created an equitable remedy for same-sex parental rights. However, such an equitable remedy is not necessary.

[2] Title 10 O.S.2011, § 7503-1.1 states:

The following persons are eligible to adopt a child:
1. A husband and wife jointly if both spouses are at least twenty-one (21) years of age;
2. Either the husband or wife if the other spouse is a parent or a relative of the child;
3. An unmarried person who is at least twenty-one (21) years of age; or
4. A married person at least twenty-one (21) years of age who is legally separated from the other spouse.

 

 

GURICH, J., dissenting:

¶1 I will not join the majority, which makes Carmen Guzman into a stepparent and thereby denies her the chance to seek custody of the child--now six years old--who came into her shared home two days after he was born. Even if Carmen were a stepparent, the best interests of the child whom she has cared for and supported for years should be considered.

¶2 We know the barebones history of what occurred between the parties over the past decade. Carmen and Adrieanna met in 2012. They began a romantic relationship, and soon afterward started living together. In early 2015, a family member asked Adrieanna to become a foster parent to her cousin, N.R., who was born that April. As soon as the newborn child was released from the hospital, he began living with Carmen and Adrieanna. Adrieanna went on to formally adopt the boy in December 2015. All the while, she and Carmen continued to share a home together. Carmen and Adrieanna married in early 2017. At the end of 2018, they separated. Adrieanna filed for divorce from Carmen and refused her any further visitation with the child. In January 2019, Carmen filed a "petition for paternity," seeking a judicial determination of her parental status concerning child custody and support.

¶3 Feeling bound by its interpretation of this Court's earlier precedent on same-sex parental rights, the district court dismissed Carmen's petition for lack of standing.[1] While Carmen's appeal was pending in the Court of Civil Appeals, we issued our opinion in Schnedler v. Lee, 2019 OK 52, 445 P.3d 238. Schnedler required us "to clarify the standing of non-biological co-parents in same-sex relationships, and to create a meaningful and comprehensive framework for the adjudication of the same." Id. ¶ 10, 445 P.3d at 242. Toward that end, the Court articulated a set of "practical guidelines" by which a non-biological same-sex co-parent could establish standing to assert a claim for parentage. The partner seeking adjudication of parental status would have to demonstrate--by a preponderance of the evidence--that he or she had: (1) "engaged in family planning with the intent to parent jointly"; (2) "acted in a parental role for a length of time sufficient to have established a meaningful emotional relationship with the child"; and (3) "resided with the child for a significant period while holding out the child as his or her own child." Id. ¶ 22, 445 P.3d at 244.

¶4 The Court of Civil Appeals correctly treated our intervening decision in Schnedler as the controlling and dispositive authority for the only questions actually presented in this appeal: whether Carmen has established standing to seek an adjudication of parentage, and whether her claim therefore should have survived Adrieanna's motion to dismiss.[2] "When ruling on a motion to dismiss for lack of standing, the trial court and the appellate court must accept the petition's allegations and all inferences that can be drawn from them as true." Eldredge v. Taylor, 2014 OK 92, ¶ 3, 339 P.3d 888, 890. In this case of a non-biological same-sex co-parent asking for meaningful legal recognition of her parental rights and responsibilities--and based on the record before us--I believe the Court of Civil Appeals got it exactly right in applying Schnedler and reversing the district court's dismissal for lack of standing. In short, Carmen has demonstrated legal standing to obtain a judicial determination of her parental rights.

¶5 A majority of this Court chooses to see things very differently: Carmen is a stepparent, and stepparents in Oklahoma have essentially no right to seek custody of, or visitation with, the child of a former spouse. This is because Carmen later married Adrieanna, the child's adoptive parent, nearly two years after the child first came into their household. And now that the couple is divorcing, Carmen (in the majority's view) is relegated to the role of former spouse and stepparent--an ex-wife with no right to custody or even visitation. I disagree.

¶6 When Carmen and Adrieanna started living together as a couple in 2012, the State of Oklahoma forbade their marriage. Marriage was not an option for them--it was illegal.[3] Change came quickly in 2014. In that year, the Tenth Circuit Court of Appeals declared unconstitutional Oklahoma's prohibition on marriage between couples of the same sex. Bishop v. Smith, 760 F.3d 1070, 1082 (10th Cir. 2014) (holding that "states may not, consistent with the United States Constitution, prohibit same-sex marriages"). The United States Supreme Court's June 26, 2015 decision in Obergefell v. Hodges, 576 U.S 644 (2015), held a union between persons of the same sex would be "deemed lawful on the same terms and conditions as marriages between persons of the opposite sex." Id. at 652.

¶7 It is not unreasonable to believe that couples, such as Carmen and Adrieanna, had already started families (not marriages, but families) when their legal unions were still prohibited. We expressly acknowledged this commonplace reality in Schnedler. In that case, Lori and Heather--a same-sex couple--had begun a romantic relationship in Oklahoma in the early 2000s. 2019 OK 52, ¶ 3, 445 P.3d at 241. In 2007, Heather gave birth to a daughter conceived through artificial insemination and for the eight years that followed, the child "grew up in a nurturing and loving environment with two parents, during which time [she] came to know Lori as a parent in every significant sense." Id. ¶ 1, 445 P.3d at 240. In April 2015, Lori and Heather separated. Id. ¶ 7, 445 P.3d at 241. "Heather left the home they had shared, and took [the child] with her." Id. They never got married, but their ability to marry did not govern Schnedler's outcome. Rather, the crucial inquiry in Schnedler centered on the totality of actions taken by the non-biological same-sex partner--the person asking for recognition as a parent--in assuming the parental role. Stated another way, did that person intend to become a parent and--after a child came into the couple's home--did he or she wholly and unreservedly act like a parent for a significant amount of time, such that "they became a family in every meaningful sense of the word"? Id. ¶ 4, 445 P.3d at 241.

¶8 I believe that Carmen passes this test. But today, the majority recedes from this equitable approach. The majority suggests Carmen cannot rely on Schnedler to establish standing solely because--at the time the family relationship with N.R. was initiated in 2015--she and Adrieanna could have legally married in Oklahoma. After this, the Court raises its main barrier to parental recognition: Carmen's supposed status as a stepparent once she and Adrieanna did get married in 2017. Finally, Carmen is penalized for not pursuing formal, legal adoption of N.R., despite the existence of serious and troubling impediments to the effectuation of that adoption.

¶9 The parties stood in an identical relationship of equal footing when the child came into their lives in April 2015--at which point they had been an intimately involved couple for some three years. Nationwide recognition of same-sex marriage would not arrive for another two months, with the June 26, 2015 decision in Obergefell. It is inequitable to deny Carmen the benefit of Schnedler's holding merely because of a six-month period--from the issuance of mandate in Bishop in October 2014 to the birth of N.R. in April 2015--in which Carmen could have legally married Adrieanna in Oklahoma, but did not.[4] The sudden legal ability to marry does not automatically equate to an individual couple's readiness, ability, or desire--emotionally, financially, or otherwise--to wed. While future cases may provide facts upon which this Court will conclude that Schnedler no longer applies, this is not that case.

¶10 Carmen and Adrieanna started planning life as a family--welcoming a child into their home while not rushing immediately into a now-legal commitment that had once seemed forever out of reach. The important thing is that Carmen continued to act as a co-parent while, no doubt, the couple talked over and worked out whether, and when, to get married. In other words, they did exactly what Schnedler allows. Accordingly, I would hold that Carmen has established standing to obtain a full and fair adjudication of her parental rights under the Schnedler framework.

¶11 Carmen and Adrieanna did marry, which leads the majority to conclude that Carmen is a stepparent. The majority declares that stepparents have "extremely limited rights."[5] Only two cases are cited in support of this proposition--one of which is a nonprecedential decision from the Court of Civil Appeals,[6] and the other of which makes it clear that (at a minimum) Carmen is not a stepparent by this Court's own definition. The lone decision from this Court cited by the majority is Byers v. Byers, 1980 OK 149, 618 P.2d 930. In Byers, we declined to impose child-support obligations on a man who had married a woman then pregnant with another man's child. Since the majority labels Carmen a stepparent with "no rights"[7] based on the reasoning in Byers, the actual underlying facts of that case demand close examination. When the mother in Byers met her "husband-to-be" in July 1977, she was "admittedly pregnant by another person." Id. ¶ 2, 618 P.2d at 931. "The parties intermarried in September and lived together for some two and one-half months thereafter." Id. The child was born in January 1978. Id. The mother brought a divorce action the following June, seeking child support from the husband. Id. ¶¶ 1--2, 618 P.2d at 931--32. We held that, "in the situation so described," a court "could not impose upon the husband the legal status of the child's father." Id. ¶ 1, 618 P.2d at 931. In doing so, we noted that "[a] situation most closely analogous to one before us is that of a stepfather." Id. ¶ 11, 618 P.2d at 933.

¶12 Byers gives a definition of a stepfather: "a man who marries a woman having a child by a previous marriage." Id. Based on a plain reading of this Court's own authority, Carmen is not a stepparent. In the majority's own phrase, a stepparent "chooses to lovingly take another's child into his or her home during marriage."[8] Carmen did not take this child into her home during marriage. She took him into her home on the day he left the hospital. Carmen did not marry a woman who already had a child. She married the woman with whom she had raised a child for the previous two years. Byers was about someone who did not want to be a father. This case is about someone who very much wants to be a mother. Carmen did not one day meet and marry Adrieanna, and then bring N.R. into her life. She was always there, with him and for him, from the very beginning. Carmen is not a stepparent.

¶13 Finally, both the majority opinion and the specially concurring opinion criticize Carmen for not adopting N.R. after she married Adrieanna. Left entirely unaddressed is Carmen's worrisome allegation that the Department of Human Services (DHS) actively discouraged an effort by her to adopt N.R. in late 2015. The trial judge rightly found this troubling as well: "One of the arguments was DHS said not to do this. Would have been nice to hear from somebody from DHS to advise why they would advise that." For over six years, since the decisions in Bishop and Obergefell, Oklahoma's statutory schemes for adoption and parentage have not been updated. The specially concurring opinion discusses how Carmen could have adopted the child as Adrieanna's spouse under 10 O.S. 2011 § 7503-1.1. That statute, which has not been updated since 1998, still refers only to husband and wife. Likewise, the provision relating to establishment of the parent--child relationship, 10 O.S. 2011 § 7700-201, defines parentage solely in terms of mother and father, and has gone unchanged since 2006. Nothing about any of these statutes is gender-neutral and likely the reason DHS discouraged Carmen from adopting N.R.[9]

¶14 "The fundamental guiding principle of our family-law jurisprudence is the pursuit of the best interests of the child"--a consideration never discussed or even mentioned in the majority opinion. Schnedler, 2019 OK 52, ¶ 17, 445 P.3d at 243. Writing in dissent over forty years ago in a child-visitation case, Justice Opala admonished that "[w]e are free to unshackle ourselves from the straitjacket of the past" by "open[ing] the portals of equity." Leake v. Grissom, 1980 OK 114, ¶ 8, 614 P.2d 1107, 1111 (Opala, J., dissenting). Until the Legislature proves itself willing and able to enact laws that fairly and facially apply to every person capable of legally parenting a child in Oklahoma, then our Court retains both the power and the obligation to grant standing in equity to allow wrongfully excluded parties to petition for adjudication of their parental rights.[10] Maybe the trial judge said it best: "It's just sad--it's just very sad." I dissent.

FOOTNOTES

[1] In granting the motion to dismiss, the district court observed, "I don't have any alternative but to grant the -- the motion to dismiss. And I certainly would not have any heartburn if anybody ever appeals my decision. But it's just sad -- it's just very sad for [the child] . . . ."

[2] The Court of Civil Appeals concluded: "This case was decided on a motion to dismiss. The pleadings in this case, if taken as true, appear to satisfy the elements noted in Schnedler. Dismissal was therefore not appropriate pursuant to the record."

[3] Okla. Const. art. 2, § 35(A) ("Marriage in this state shall consist only of the union of one man and one woman."); see also 43 O.S. § 3(A) (including among requirements for valid marriage that it take place between "person[s] of the opposite sex"); id. § 3.1 ("A marriage between persons of the same gender performed in another state shall not be recognized as valid and binding in this state as of the date of the marriage."). Indeed, even to issue them a marriage license would have been a criminal act. Okla. Const. art. 2, § 35(C) ("Any person knowingly issuing a marriage license in violation of this section shall be guilty of a misdemeanor.").

[4] Although the Tenth Circuit invalidated Oklahoma's ban on same-sex marriage on July 18, 2014, the court stayed its mandate in the case pending the disposition of any subsequently filed petition for writ of certiorari to the United States Supreme Court. See Bishop, 760 F.3d at 1096. The United States Supreme Court denied the Tulsa County Court Clerk's petition for writ of certiorari on October 6, 2014. Smith v. Bishop, 135 S. Ct. 271 (2014) (denying petition for writ of certiorari). The Tenth Circuit lifted its stay on that same date. Bishop v. Smith, Nos. 14--5003, 14--5006, 2014 WL 4960523, at *1 (10th Cir. Oct. 6, 2014) ("On this date, the United States Supreme Court denied certiorari review in these matters. Consequently, the stay of the mandate directed in our decision dated July 18, 2014 is lifted, and the mandate shall issue forthwith.").

[5] Majority Op. ¶ 8, at 4.

[6] The case is Steinberg v. Frentz, 2002 OK CIV APP 94, 57 P.3d 877--a nonbinding split decision in direct conflict with Looper v. McManus, 1978 OK CIV APP 26, 581 P.2d 487, a previous Court of Civil Appeals opinion dealing favorably with stepparent visitation rights.

[7] Majority Op. ¶ 8, at 4.

[8] Id. ¶ 8, at 5.

[9] In 2017, the National Conference of Commissioners of Uniform State Laws approved, and recommended for enactment in all states, a new Uniform Parentage Act. The Act accords a presumption of parentage to "[a]n individual" if he or she "resided in the same household with the child for the first two years of the life of the child, including any period of temporary absence, and openly held out the child as the individual's child." Unif. Parentage Act § 204(a)(2) (Unif. Law Comm'n 2017). The Oklahoma Legislature adopted the previous incarnation of the Uniform Parentage Act in 2006. See 10 O.S. §§ 7700-101 to -902.

[10] See Schnedler, 2019 OK 52, ¶ 18, 445 P.3d at 243 ("Our jurisprudence has been consistent in considering issues of parental rights to be equitable in nature, as this approach has allowed us to most adaptively serve the best interests of the child."); In re Bomgardner, 1985 OK 59, ¶ 17, 711 P.2d 92, 97 ("Court supervision over the welfare of children is equitable in character."); Ex parte Yahola, 1937 OK 306, ¶ 14, 71 P.2d 968, 972 (explaining that "the supervision of the courts over the custody and welfare of children is of itself equitable, and not strictly legal, in nature").






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2002 OK CIV APP 94, 57 P.3d 877, STEINBERG v. FRENTZ
Discussed at Length
 1978 OK CIV APP 26, 581 P.2d 487, LOOPER v. McMANUS
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1937 OK 306, 71 P.2d 968, 180 Okla. 637, Ex parte YAHOLA
Discussed
 1999 OK 87, 20 P.3d 135, 70 OBJ 3149, May-Li Barki, M.D., Inc. v. Liberty Bank & Trust, Co.
Discussed
 2014 OK 92, 339 P.3d 888, ELDREDGE v. TAYLOR
Discussed at Length
 1980 OK 114, 614 P.2d 1107, Leake v. Grissom
Discussed at Length
 1980 OK 149, 618 P.2d 930, Byers v. Byers
Discussed at Length
 2019 OK 52, 445 P.3d 238, SCHNEDLER v. LEE
Discussed at Length
 2000 OK 22, 18 P.3d 339, 71 OBJ 927, Mehdipour v. Holland
Discussed
 1997 OK 154, 952 P.2d 517, 69 OBJ 42, McMINN v. CITY OF OKLAHOMA CITY
Discussed
 1999 OK 56, 6 P.3d 1050, 70 OBJ 1952, Collins v. Mid-Continent Pipeline Co.
Discussed
 1985 OK 59, 711 P.2d 92, Bomgardner, In re
Discussed
Title 10. Children
 Cite
Name
Level

 10 O.S. 7700-101, Short Title
Cited
 10 O.S. 7700-201, Establishment of Mother-Child and Father-Child Relationships
Discussed
Title 43. Marriage
 Cite
Name
Level

 43 O.S. 3, Persons Having Capacity to Marry
Cited
 43 O.S. 112.4, Stepparent's Support of Spouse's Children From Prior Relationship
Cited


 
 








 
 
 
 

 
 




 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA